**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| | Case No. 18-12309 (JKS) |
| ONE AVIATION CORPORATION, *et al*., | |
| | Jointly Administered |
| Debtors. | |
| | |
| DILIGENT ENTERPRISE MANAGEMENT, LLC, | |
| Plaintiff, | |
| - against - | Adv. Pro. No. 25-52065 (JKS) |
| AML GLOBAL ECLIPSE, LLC, DWC PINE INVESTMENTS I, LTD., ALAN KLAPMEIER, JAMES CARROLL, STEVE SERFLING, RJ SIEGLE, and MIKE WYSE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AML GLOBAL**
**ECLIPSE LLC'S MOTION TO DISMISS THE COMPLAINT**

FRIED FRANK HARRIS, SHRIVER &
JACOBSON LLP
Michael C. Keats (*pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: michael.keats@friedfrank.com

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Mary F. Caloway (DE Bar No. 3059)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
          mcaloway@pszjlaw.com

*Counsel for Defendant*
*AML Global Eclipse, LLC*

Dated: October 6, 2025

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................................1

SUMMARY OF ARGUMENT .........................................................................................3

STATEMENT OF FACTS...............................................................................................4

    A.    The Main Bankruptcy Case ....................................................................4

    B.    The Delaware District Court Appeal .....................................................9

    C.    The Third Circuit Appeal ......................................................................9

    D.    The Bankruptcy Court-Approved Sale to AML Global Closes ...........10

    E.    Further Litigation in the Main Bankruptcy Case .................................10

ARGUMENT..............................................................................................................11

I.     PLAINTIFF'S CLAIMS AGAINST AML GLOBAL ARE BARRED BY PRECLUSION DOCTRINES .........................................................................................11

    A.    The Law of the Case Bars Plaintiff's Claims Against AML Global ...................12

    B.    Claim Preclusion Bars Plaintiff's Claims Against AML Global...........................13

        1.    The Sale Order is a Final Judgment on the Merits...................................13

        2.    AML Global and Diligent Have Been Parties to Both Actions for Preclusion Purposes...................................................................................14

        3.    Citiking Pursued the Same Cause of Action Against AML Global in the Prior Action That Diligent Seeks to Pursue Here ....................................14

    C.    Issue Preclusion Bars Plaintiff's Claims Against AML Global ...........................16

        1.    The Sufficiency of the Sale Process was Previously Adjudicated in the Main Bankruptcy Case .........................................................................16

        2.    The Sufficiency of the Sale Process Was Actually Litigated in the Main Bankruptcy Case .................................................................................18

        3.    This Court's Determination That the Sale Process Was Sufficient Was Necessary to This Court's Approval of the Sale Motion..........................19

        4.    Diligent's Interests Were Fully Represented in the Main Bankruptcy Case ....................................................................................................20

II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST AML GLOBAL ...........20

    A.    Choice of Law Rules Dictate Delaware Substantive Law Applies. .....................22

    B.    The Complaint Fails to Adequately Plead Tortious Interference with Contract. ................................................................................................24

    C.    The Complaint Fails to Adequately Plead Civil Conspiracy................................26

CONCLUSION............................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aclate, Inc v. Eclipse Mktg. LLC,*
 2020 WL 6158579 (D. Del. Oct. 21, 2020) ........................................................................ 24

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.,*
 871 A.2d 428 (Del. 2005) .................................................................................................... 26

*AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.,*
 726 F. Supp. 2d 307 (S.D.N.Y. 2010) ................................................................................. 23

*Matter of Allstate Ins. Co. (Stolarz),*
 81 N.Y.2d 219 (1993) .......................................................................................................... 22

*American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*
 2014 WL 354496 (Del. Ch. Feb. 3, 2014) ...................................................................... 26, 27

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ........................................................................................................ 20, 21

*Bankers Tr. Co. of W. New York v. Crawford,*
 781 F.2d 39 (3d Cir. 1986) .................................................................................................. 22

*Matter of Baudoin,*
 981 F.2d 736 (5th Cir. 1993) ............................................................................................... 13

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ........................................................................................................ 21, 25

*In re Brown,*
 951 F.2d 564 (3d Cir. 1991) ................................................................................................ 18

*Burtch v. Milberg Factors, Inc.,*
 662 F.3d 212 (3d Cir. 2011) ............................................................................................ 21, 25

*Bush v. Phila. Redevelopment Auth.,*
 2022 WL 17691563 (3d Cir. Dec. 15, 2022) ...................................................................... 13

*Chevron Corp. v. Donziger,*
 871 F. Supp. 2d 229 (S.D.N.Y. 2012) ................................................................................. 23

*Connelly v. Lane Constr. Corp.,*
 809 F.3d 780 (3d Cir. 2016) ........................................................................................... 20, 21

*Cooney v. Osgood Mach., Inc.*,
  81 N.Y.2d 66 (1993).................................................................................................23

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
  176 F.3d 187 (3d Cir. 1999) .............................................................. 11, 13, 14, 15

*CrewFacilities.com, LLC v. HotelEngine, Inc.*,
  2021 WL 2649758 (D. Del., 2021) .......................................................................27

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) .................................................................................21

*Devex Corp. v. Gen. Motors Corp.*,
  857 F.2d 197 (3d Cir. 1988) .................................................................................12

*Diligent Enterprise Management, LLC v. AML Global Eclipse, LLC, et al.*,
  Index No. 651374/2024 ..........................................................................................1

*Diligent Enterprise Management, LLC v. AML Global Eclipse, LLC, et al.*,
  Index No. 653523/2023 ..........................................................................................1

*In re Farmland Indus., Inc.*,
  376 B.R. 718 (Bankr. W.D. Mo. 2007), *aff'd*, 408 B.R. 497 (B.A.P. 8th Cir.
  2009).......................................................................................................................17

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981) ..............................................................................................11

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
  414 F.3d 325 (2d Cir. 2005) .................................................................................23

*Food King, Inc. v. Norkus Enters., Inc.*,
  2006 WL 3674997 (D.N.J. Dec. 13, 2006)...........................................................17

*Gillis v. Toliver*,
  2005 WL 2464991 (D. Del. Oct. 6, 2005) ............................................................26

*Gupta v. Wipro Ltd.*,
  749 F. App'x 94 (3d Cir. 2018) ............................................................... 14, 15, 21

*Henglein v. Colt Indus. Operating Corp.*,
  260 F.3d 201 (3d Cir. 2001) .................................................................................16

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW)
  v. Visteon Corp.*,
  2015 WL 4126742 (D. Del. July 9, 2015) ............................................................19

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987) ............................................................................................24

*Katchen v. Landy*,
    382 U.S. 323 (1966) ..........................................................................................................11

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
    844 F. Supp. 2d 519 (D. Del. 2012) ..................................................................................26

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch., 2009) ....................................................................................26, 27

*In re La Paloma Generating Co., LLC*,
    2020 WL 224569 (Bankr. D. Del. Jan. 13, 2020) ..............................................................12

*Lamplugh v. PBF Energy*,
    2020 WL 434204 (D. Del. Jan. 28, 2020) ....................................................................23, 26

*Lee v. Bankers Tr. Co.*,
    166 F.3d 540 (2d Cir. 1999) ..............................................................................................22

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*,
    89 F. Supp. 3d 599 (S.D.N.Y. 2015) ................................................................................22

*Lutz v. Portfolio Recovery Assocs., LLC*,
    49 F.4th 323 (3d Cir. 2022) ..........................................................................................20, 24

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
    2021 WL 2037552 (S.D.N.Y. May 21, 2021) ..................................................................23

*Mandeville & Jameson v. Joseph Riddle & Co.*,
    5 U.S. (1 Cranch) 290 (1803) ............................................................................................14

*Matter of Met-L-Wood Corp.*,
    861 F.2d 1012 (7th Cir. 1988) ..........................................................................................13

*Montana v. United States*,
    440 U.S. 147 (1979) ....................................................................................................11, 16

*NACCO Indus., Inc. v. Applica Inc.*,
    997 A.2d 1 (Del. Ch. 2009) ..............................................................................................27

*Nat'l Med. Imaging, LLC v. Ashland Funding LLC*,
    648 F. App'x 251 (3d Cir. 2016) ......................................................................................16

*In re Old BBP, Inc.*,
    2020 WL 7074642 (Bankr. D. Del. Dec. 1, 2020) ............................................................13

*Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*,
  816 F.3d 273 (4th Cir. 2016) ............................................................. 13

*In re Radnor Holdings Corp.*,
  564 B.R. 467 (D. Del.), *aff'd,* 706 F. App'x 94 (3d Cir. 2017) ................................ 12, 15, 16

*Raytech Corp. v. White*,
  54 F.3d 187 (3d Cir. 1995) ............................................................. 16

*In re Resyn Corp.*,
  945 F.2d 1279 (3d Cir. 1991) ............................................................ 12

*In re Samson Res. Corp.*,
  2021 WL 1174534 (D. Del. Mar. 29, 2021) ..................................................... 14

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ............................................................. 21

*Shearin v. E.F. Hutton Grp., Inc.*,
  652 A.2d 578 (Del. Ch. 1994) ............................................................ 24

*Sims v. Viacom Inc.*,
  544 F. App'x 99 (3d Cir. 2013) .......................................................... 14

*Stokes v. Markel Am. Ins. Co.*,
  595 F. Supp. 3d 274 (D. Del. 2022) ....................................................... 22

*In re Summit Metals, Inc.*,
  477 B.R. 484 (Bankr. D. Del. 2012) ....................................................... 18

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) .................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................... 21

*Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*,
  292 F.3d 384 (3d Cir. 2002) ............................................................. 14

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) .................................................................... 22

*In re Veg Liquidation, Inc.*,
  931 F.3d 730 (8th Cir. 2019) ............................................................ 20

*In re Washington Mut., Inc.*,
 2010 WL 3238903 (Bankr. D. Del. Aug. 13, 2010), *aff'd*, 2017 WL 2256965
 (D. Del. May 23, 2017), *aff'd*, 741 F. App'x 88 (3d Cir. 2018)............................21

*White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*,
 502 B.R. 416 (Bankr. D. Del. 2013) ................................................................21

*Winget v. JP Morgan Chase Bank, N.A.*,
 537 F.3d 565 (6th Cir. 2008) .........................................................................13

**Statutes**

11 U.S.C. § 105(a) .............................................................................................27

28 U.S.C. § 1404(a) ...........................................................................................22

28 U.S.C. § 1412 ...............................................................................................22

Bankruptcy Code Chapter 7 ....................................................................... 1, 5, 10, 11

Bankruptcy Code Chapter 11 ...................................................................... 4, 5, 8, 10

Bankruptcy Code Section 363 ...............................................................................5

Bankruptcy Code Section 363(f) ........................................................................ 7, 8

Bankruptcy Code Section 363(k).................................................................... 18, 19

Bankruptcy Code Section 363(m).................................................................... 8, 9

Bankruptcy Code Section 363(n)..................................................................... 9, 16

Federal Rule of Bankruptcy Procedure 7054 ...........................................................27

Federal Rule of Bankruptcy Procedure 9011 ...........................................................27

Defendant AML Global Eclipse, LLC ("<u>AML Global</u>"), pursuant to Federal Rule of Civil Procedure 12(b)(6), incorporated by Federal Rule of Bankruptcy Procedure 7012, respectfully submits this memorandum of law in support of its motion (the "<u>Motion</u>") to dismiss the complaint (the "<u>Complaint</u>" or "<u>Compl.</u>") filed by Plaintiff Diligent Enterprise Management, LLC ("<u>Plaintiff</u>" or "<u>Diligent</u>").[1]

## NATURE AND STAGE OF THE PROCEEDINGS

1.      This adversary proceeding (the "<u>Adversary Proceeding</u>") arises in the chapter 7 proceedings (the "<u>Chapter 7 Cases</u>") of One Aviation Corporation ("<u>One Aviation</u>") and its affiliated debtors (collectively with One Aviation, the "<u>Debtors</u>").

2.      Plaintiff commenced this Adversary Proceeding on March 15, 2024 by filing the Complaint in New York state court in the action captioned *Diligent Enterprise Management, LLC v. AML Global Eclipse, LLC, et al.,* Index No. 651374/2024.[2] The action was removed to New York federal court on March 25, 2024. D.D.I. 1. Briefing on the parties' motion to remand (by Diligent) and cross-motion to transfer (by the defendants) was fully submitted on November 1, 2024. D.D.I. 44-49, 58.

---

[1] References herein to documents in the Main Bankruptcy Case will be cited as "D.I.", those in the Adversary Proceeding will be cited as "A.D.I."; those in the appeal to the District of Delaware, Case No. 201569-CFC, will be cited as "D.D.A.I."; and those in the appeal to the United States Court of Appeals for the Third Circuit, Case No. 20-03406, will be cited as "C.A.3 D.I." and those in the transferred case to the District of Delaware, Case No. 25-689-CFC, will be cited as "D.D.I." All citations, internal quotations, and alterations are omitted unless otherwise noted. Emphasis is added in bold italics and alternations are in brackets.

[2] Plaintiff earlier filed a substantially similar complaint in New York state court on December 15, 2023 in the action captioned *Diligent Enterprise Management, LLC v. AML Global Eclipse, LLC, et al.,* Index No. 653523/2023. AML Global and the other defendants removed that action to New York federal court on December 15, 2023. Thereafter, on March 15, 2024, in the midst of briefing cross-motions to remand and transfer, Diligent voluntarily and inexplicably dismissed the case.

3.      On May 27, 2025, the Honorable Valerie E. Caproni, United States District Judge for the Southern District of New York, denied Diligent's motion to remand and granted the defendant's motion to transfer. D.D.I. 60.

4.      This matter was transferred to the United States District Court for the District of Delaware on June 4, 2025. The matter was assigned to Chief Judge Colm F. Connolly.

5.      On June 17, 2025, AML Global filed an Unopposed Motion to Extend Time (the "Extension Motion"). D.D.I. 67. The Extension Motion provided that (i) Plaintiff must file an amended complaint by August 21, 2025; and (ii) Defendants must answer, move, or otherwise respond to the complaint by October 6, 2025. D.D.I. at 2.

6.      Judge Connolly granted the Extension Motion on June 18, 2025. D.D.I. 68.

7.      On July 28, 2025, the parties filed a Joint Statement Pursuant to Local Rule 81.2 (the "Joint Statement"). D.D.I. 71. The Joint Statement stated that, "[t]he parties believe that the only matter currently requiring judicial action is the question of referral of this action to the Bankruptcy Court[.]" The Joint Statement further stated, "Defendants believe this matter should be automatically referred to the Bankruptcy Court pursuant to the Standing Order. Plaintiff does not contest that the Standing Order appears to apply to this matter." D.D.I. 71 at 2.

8.      On August 12, 2025, Judge Connolly referred this Adversary Proceeding to the United States Bankruptcy Court for the District of Delaware. D.D.I. 72.

9.      Diligent did not file an amended complaint by August 21, 2025. On September 29, 2025, Diligent filed a Notice of Dismissal dismissing with prejudice all claims against certain individual defendants.  D.I. 5

10.     AML Global now timely moves to dismiss the counts in the Complaint against AML Global pursuant to Civil Rule 12(b)(6).

## SUMMARY OF ARGUMENT

11.     This dispute is yet another attempt by Plaintiff to litigate claims that its predecessor-in-interest, Citiking International US LLC ("Citiking"), could have, should have, and in fact did, litigate in the Debtors' bankruptcy cases.

12.     Citiking—a creditor of ONE Aviation—actively participated in Debtors' bankruptcy proceedings (the "Main Bankruptcy Case"), and raised serial objections that this Court[3] overruled. Citiking unsuccessfully appealed those rulings to the United States District Court for the District of Delaware and the United States Court of Appeals for the Third Circuit. Diligent now seeks to recast those same objections as state law claims to overturn and undo the economics of this Court's *Order (I) Approving Purchase Agreement, (II) Authorizing Sale Free And Clear Of All Liens, Claims, Encumbrances, And Other Interests, And (III) Granting Related Relief* (the "Sale Order"). D.I. 1063.

13.     The Complaint's two counts against AML Global (Counts IV and V) must be dismissed with prejudice for the following three independent reasons:

       a.     Law of the Case. All of the claims against AML Global are barred or enjoined by this Court's Sale Order, which found, *inter alia*, that AML Global purchased Debtors' Eclipse light jet assets in good faith and without collusion. *See, e.g.*, D.I. 1063, Sale Order ¶ 44.

       b.     Claim and Issue Preclusion. The Complaint's allegations against AML Global cannot be squared with this Court's prior findings, as set forth in the Sale Order. This

---

[3] Nearly all of the pertinent facts and issues relevant to this Adversary Proceeding arose and were adjudicated in the Main Bankruptcy Case when the Honorable Christopher Sontchi, United States Bankruptcy Judge for the District of Delaware, was presiding. Judge Sontchi retired in mid-2022, following which the Main Bankruptcy Case was reassigned to the Honorable J. Kate Stickles, United States Bankruptcy Judge for the District of Delaware.

Court's prior factual findings and legal conclusions are final and preclusive of the Complaint's allegations and claims.

        c.    <u>Failure to State Claims.</u> With respect to each of Plaintiff's claims, the Complaint fails to plead factual allegations necessary to properly state a claim for relief or to survive AML Global's Motion. Plaintiff's tortious interference with contract claim must be dismissed because the Complaint fails to adequately plead the elements of knowledge, an intentional act, acting without justification, or damages. Plaintiff's civil conspiracy claim similarly must be dismissed because it is predicated on the legally insufficient tortious interference claim and, in any event, tortious interference with contract cannot serve as the predicate wrong for a civil conspiracy claim.

        14.    Plaintiff and Citiking may disagree with the treatment of their claims by this Court, the Delaware District Court, and the Third Circuit, but they cannot bat them aside under the guise of state law claims. Accordingly, AML Global respectfully requests that this Court dismiss the counts against AML Global with prejudice and permanently enjoin Plaintiff from again filing a case arising from the facts underlying this Adversary Proceeding.

## **STATEMENT OF FACTS**

### **A.    The Main Bankruptcy Case**

Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court on October 9, 2018. D.I. 1. The next day, Debtors filed a *Joint Prepackaged Plan of Reorganization for ONE Aviation and Its Debtor Affiliates* (the "Plan"). D.I. 13. After eight months with no progress, on June 17, 2019, Debtors moved this Court for authorization to sell Debtors' assets to Debtors' pre-petition senior lender, Citiking. D.I. 561.

That sale motion did not come to fruition. Instead, Citiking and another pre-petition senior lender to Debtors, defendant DWC Pine, entered into a letter agreement dated July 25, 2019 (the "Letter Agreement") that provided, in relevant part, "It is the intention of Buyer [Citiking] and Seller [DWC Pine] that the Company [Debtors] shall withdraw its pending Motion to Sell under Section 363 of the Bankruptcy Code … and, in its place, file a plan of reorganization that will incorporate" provisions enumerated in the Letter Agreement. Compl., Ex. 9 § 5. Debtors withdrew the sale motion on July 26, 2019, D.I. 633, and filed an amended Plan on August 30, 2019, D.I. 659. This Court confirmed the amended Plan on September 18, 2019. D.I. 707.

The Plan contemplated that Citiking would own 100% of the reorganized Debtors' equity upon emergence from bankruptcy. However, the Plan and Letter Agreement required Citiking ***to fund various settlements and distributions***; reach exit financing agreements with other parties involved in the bankruptcy case; provide exit financing funding; and take the Plan effective by December 1, 2019. Compl., Ex. 9 § 5(i)-(v); D.I. 659 §§ 2.2(b), 9.1.9. As the Official Committee of Unsecured Creditors told this Court in May 2020, "the Chapter 11 Cases have been plagued by delay, disputes, and funding issues," including Citiking leveraging the Plan effective date to negotiate fee concessions and failing to finalize the necessary exit financing. D.I. 831 ¶¶ 13, 21; *see also* D.I. 880 ¶¶ 16-17. Ultimately, Citiking failed to fully fund the settlements and distributions; refused to engage or cooperate in exit financing discussions; and did not provide any exit financing. As a result, due entirely to Citiking's repeated failures to perform under the Plan, it failed to be consummated.

By August 2020, Debtors' financial position had deteriorated further and Citiking "finally admitted … that it [could] not meet its funding obligations under the Plan to go effective." D.I. 880 ¶¶ 18, 24. In an effort to stave off a value-destructive chapter 7 liquidation, on August 28,

2020, Debtors filed an emergency motion for authorization to seek alternative funding and a motion for authorization to initiate a sale process with SEF OA LLC ("SE Falcon"). D.I. 877, 878.

During oral argument, Citiking urged this Court to deny Debtors' emergency funding and sale motions. Citiking's central theme was that Debtors were seeking to "destroy" and "punish" Citiking because "[f]or some reason they just want to get rid of Citiking." D.I. 912 at 28:7-11, 31:12-13. This Court disagreed, finding, "this is a *problem of Citiking's own making* and I think the debtors have been extraordinarily patient." *Id.* at 37:10-12. This Court further found "*Citiking has insufficient cash to close, [and] they are unwilling to close … There is no path forward with Citiking.*" *Id.* at 38:1-6.[4] This Court granted Debtors' motion to initiate a sale process and entered an interim order granting the emergency funding motion (the "Interim DIP Order"). D.I. 908, 911. Citiking moved to vacate the Interim DIP Order. D.I. 986. This Court granted the motion in part and denied it in part, observing, "*there was some inequitable conduct by Citiking*. … [I]t became clear probably at least nine months ago … that this thing was never going to close and that the case should pivot in some way to a different resolution." D.I. 1060 at 106:22-107:04.

The sale to SE Falcon collapsed when that entity failed to meet its obligations, and Debtors by necessity continued to market their assets to potential purchasers. D.I. 969 ¶¶ 1-2. On October 20, 2020, Debtors and AML Global entered into an Asset Purchase Agreement through which AML Global would acquire substantially all of Debtors' assets related to the Eclipse light jet aircraft program. *Id.* The same day, Debtors filed a motion seeking this Court's approval for a sale to AML Global or any bidder that submitted a higher and better offer (the "Sale Motion"). *Id.*

---

[4] This Court further found it was "appropriate here to, in effect, void the final DIP order [that granted Citiking certain protections] because of Citiking's own inequitable conduct," and, "based on the inequities of this case caused by Citiking," that Citiking was equitably subordinated to DWC Pine, D.I. 912 at 39:16-18, 40:4-7. *But see* D.I. 1060 at 108:23-25 (Judge Sontchi vacating equitable subordination portion of his ruling).

Citiking objected. D.I. 1019. On November 10, 2020, Debtors filed a *Notice of Revised Bidding Procedures* ("Revised Bidding Procedures"). D.I. 1040. The Revised Bidding Procedures required, among other things, that a bidder (i) disclose "the form of and total consideration to be paid by such Bidder, ***including*** the amount of proposed cash consideration," *id.* at 3(a); and (ii) deposit both a $500,000 good-faith deposit and "the amount of the total cash consideration contemplated by the Qualified Bid" to Debtors or into a segregated account, *id.* at 3(b) & (c).

On November 20, 2020, this Court held a hearing on the Sale Motion (the "Sale Hearing"). D.I. 1070. At the hearing, counsel for DWC Pine informed the Court that DWC Pine had agreed to sell its interest in Debtors' debt to AML Global. *See id.* at 14:14-25. Specifically, counsel for DWC Pine disclosed to the Court:

> Your Honor, while I don't think I have an obligation, I do want to disclose to you and the court just by way of disclosure just within the last hour or so we were able to document our sale of our debt to AML subject to closing of -- subject to entry of a sale order.

D.I. 1070 at 14:14–21.

Citiking objected to the Sale Motion, among other reasons, arguing that: (i) Citiking was "entitled to have the opportunity to credit bid" under Section 363(f) of the Bankruptcy Code, *id.* at 33:22-34:1; (ii) Debtors "unilaterally issued bidding procedures requiring the entire purchase price to be deposited in advance," *id.* at 35:25-36:2; and (iii) the sale was "the result of an insufficient process" because, Citiking alleged, the marketing and auction process was not robust enough, *id.* at 34:2-36:17. As to the second point, counsel for Debtors explained the bidding procedures were amended "in reaction to AML's bid and offer to put their entire cash purchase price into escrow. And so, we felt that it was appropriate to require all of the potential bidders to do the same in order to evaluate them on an equal footing." *Id.* at 44:22-45:2.

At the conclusion of the Sale Hearing, this Court "***overrul[ed] all the objections***" to the sale. *Id.* at 51:16-17. The Court found that the sale satisfied Section 363(f) of the Bankruptcy Code; the sale process was sufficient; a formal auction with bid procedures was not required by the Bankruptcy Code; and Debtors "simply didn't have the time or the money to do anything more." *Id.* at 48:10-49:24.

On November 20, 2020, this Court entered the Sale Order approving the sale to AML Global. D.I. 1063. In the Sale Order, this Court "found, concluded, and determined," *inter alia*:

- "The terms contained in the Purchase Agreement constitute the highest or otherwise best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' bankruptcy estates for the Purchased Assets than would be provided by any other available alternative." D.I. 1063 ¶ P.

- "The Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Purchased Assets. No higher or otherwise better offer was submitted to the Debtors to purchase the Purchased Assets for greater economic value to the Debtors' bankruptcy estates than provided by the Buyer pursuant to the Purchase Agreement." D.I. 1063 ¶ Q.

- "[T]he Purchase Agreement and the consummation of the Sale contemplated thereby is in the best interests of the Debtors, their respective bankruptcy estates and creditors and other parties in interest in these Chapter 11 Cases." D.I. 1063 ¶ R.

- "The Buyer is purchasing the Purchased Assets in good faith, is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code … in that: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; … (iv) the Buyer agreed to provisions in the Purchase Agreement that would enable the Debtors to accept a higher or better offer in respect of the Sale; and (v) the negotiation and execution of the Purchase Agreement, including the Sale contemplated thereby, were at arms' length and in good faith." D.I. 1063 ¶ S.

- "None of the transactions contemplated by the Purchase Agreement, including, without limitation, the Sale or the assumption and assignment of any Assigned Contracts, is being undertaken for the purpose of hindering, delaying, or defrauding any creditors under the Bankruptcy Code, under the laws of the United States, or

under the laws of any state, territory, possession, or the District of Columbia." D.I. 1063 ¶ V.

This Court further "ordered, adjudged, and decreed," in the Sale Order, *inter alia*, that:

- "The Sale is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code . . . . The Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and as such is entitled to the full benefits and protections of such section." D.I. 1063 ¶ 44.

- "As a good-faith purchaser of the Purchased Assets, the Buyer has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets, and therefore the sale of the Purchased Assets may not be avoided pursuant to section 363(n) of the Bankruptcy Code." D.I. 1063 ¶ 45.

The Court stayed the Sale Order until November 27, 2020 to afford Citiking an opportunity to appeal. *See* D.I. 1070 at 51:19-21.

### B.    The Delaware District Court Appeal

On November 23, 2020, Citiking filed a notice of appeal from the Sale Order, D.I. 1068, and emergency motion to stay the Sale Order pending the appeal in the District of Delaware, D.D.A.I. 4. Citiking argued in its emergency stay motion that the "sales process was fundamentally flawed" and again complained it was deprived of its purported right to credit bid. *Id.* ¶¶ 1-2, 29. Citiking reiterated these arguments during an emergency stay motion hearing before the Delaware District Court on November 24, 2020. *See* C.A.3. D.I. 1 at 17:2-18, 17:22-19:18. The District Court declined to hear argument from the other parties and denied Citiking's emergency stay motion. *Id.* at 30:9-11.

### C.    The Third Circuit Appeal

Citiking filed a notice of appeal and an emergency stay motion in the Third Circuit on November 25, 2020. C.A.3. D.I. 1, 5. Citiking again argued that its "[f]undamental rights" were at stake, including its claimed right "to credit bid up to the face amount of its debt to re-take its

collateral and protect itself from an undervalue sale[.]" C.A.3. D.I. 5 at 2. The Third Circuit issued

an Order on November 27, 2020 summarily denying Citiking's emergency motion. C.A.3. D.I. 8.

### D.     The Bankruptcy Court-Approved Sale to AML Global Closes

The sale to AML Global closed on November 30, 2020. D.I. 1074. AML Global made a

cash payment to Debtors totaling $5,250,000 (subject to adjustments), assumed over 200 of

Debtors' contracts and leases, and paid over $1,400,000 in cure costs. D.I. 1227 ¶ 17. Citiking

stipulated to the voluntary dismissal of its Third Circuit appeal, C.A.3. D.I. 12, and its Delaware

District Court appeal was dismissed for failure to prosecute, D.D.A.I. 39.

On February 18, 2021, this Court converted Debtors' chapter 11 cases to cases under

chapter 7 of the Bankruptcy Code upon motion of the Official Committee of Unsecured Creditors.

D.I. 1152.

### E.     Further Litigation in the Main Bankruptcy Case

In July 2021, Citiking objected "to the allowance of any claim asserted by AML Global"

against Debtors or their estates (the "Objection to AML's Claim"). D.I. 1224. Citiking argued,

*inter alia*, that (i) AML Global and DWC Pine "scheme[d]" to "lock in AML as the successful

bidder" and "deprive Citiking of its right to credit bid," *id.* ¶¶ 2-3; (ii) "DW's unilateral sale of its

secured debt position to AML violated Citiking's right of first refusal under the Intercreditor

Agreement [between DWC Pine and Citiking, dated November 10, 2017 (the "Intercreditor

Agreement")]," *id.* ¶ 8; and (iii) DWC Pine's November 20, 2020 disclosure to this Court regarding

the sale of its interest in Debtors' debt to AML Global "raises questions concerning the integrity

and transparency of the Sale process," *id.* ¶ 23. As Debtors' Chapter 7 Trustee observed, Citiking's

"apparent purpose [in] filing the Citiking Claim Objection is to collaterally attack the Sale Order

in circumvention of the appeal process." D.I. 1229 ¶ 3; *see also* D.I. 1227 (AML Global's response

to Citiking's "procedurally improper collateral attack on the Sale Order based on a groundless conspiracy theory").

Citiking adjourned its objection in September 2021, D.I. 1246, but raised it anew in March 2022 in opposition to a distribution settlement reached by the Chapter 7 Trustee, AML Global, and other parties in interest in the Main Bankruptcy Case, D.I. 1263. On June 23, 2023, Citiking purportedly assigned its standing to bring the instant claims to Diligent. Compl. ¶ 1. On June 24, 2023, the Chapter 7 Trustee, AML Global, Citiking, and other interested parties reached a settlement on distributions. *See* D.I. 1351. As noted in the Court's signed order, Citiking withdrew its March 2022 objection "in exchange for an agreed distribution in the amount of $950,000." *Id.* at 2.

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS AGAINST AML GLOBAL ARE BARRED BY PRECLUSION DOCTRINES

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334 (1966). In fact, the underlying policies supporting the preclusion doctrines, including promoting finality and protecting litigants from "the expense and vexation attending multiple lawsuits," applies "in the bankruptcy context in particular." *Montana v. U.S.*, 440 U.S. 147, 153 (1979); *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 195 (3d Cir. 1999); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (*res judicata* is "a rule of fundamental and substantial justice . . . which should be cordially regarded and enforced by the courts.").

Plaintiff's claims against AML Global are barred and precluded by the law of the case, *res judicata* (claim preclusion), and collateral estoppel (issue preclusion) doctrines. Each doctrine demands dismissal with prejudice of the tortious interference and civil conspiracy claims against AML Global.

### A.      The Law of the Case Bars Plaintiff's Claims Against AML Global

The law of the case doctrine provides that "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation." *In re Resyn Corp.*, 945 F.2d 1279, 1281 (3d Cir. 1991) (quoting *Devex Corp. v. Gen. Motors Corp.*, 857 F.2d 197, 199 (3d Cir. 1988)). "The doctrine applies to factual findings made in a main bankruptcy proceeding and is binding on parties to a subsequent adversary proceeding." *In re La Paloma Generating Co., LLC*, 2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020); *In re Radnor Holdings Corp.*, 564 B.R. 467, 483 (D. Del.) (same), *aff'd,* 706 F. App'x 94 (3d Cir. 2017).

This Court has already "found, concluded, and determined" that AML Global was a good-faith purchaser and did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets[.]" D.I. 1063 (Sale Order) ¶¶ 44, 45. This Court further already "ordered, adjudged, and decreed" that AML Global undertook the purchase of Debtors' assets without collusion and in good faith, and that AML Global was a good-faith purchaser and did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets[.]" D.I. 1063 (Sale Order) ¶¶ 44, 45. These binding findings constitute the law of this case. As a result, the thrust of Plaintiff's claims against AML Global—that AML Global colluded, conspired, and schemed with DWC Pine—is entirely barred and precluded by this Court's Sale Order. *See Radnor Holdings*, 564 B.R. at 483 (holding that law of the case "precludes [plaintiff] from re-litigating issues previously decided by the Bankruptcy Court.").

**B.      Claim Preclusion Bars Plaintiff's Claims Against AML Global**

"Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *CoreStates*, 176 F.3d at 205. These elements are readily satisfied here.

1.      The Sale Order is a Final Judgment on the Merits

A bankruptcy court's sale order is a final, appealable order on the merits. *See Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 280 (4th Cir. 2016) (finding that sale orders are final orders on the merits and affirming dismissal on *res judicata* grounds); *Matter of Baudoin*, 981 F.2d 736, 742 (5th Cir. 1993) (holding "that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for *res judicata* purposes"); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (holding that "a bankruptcy court's sale order is a final order for res judicata purposes"); *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1016 (7th Cir. 1988) (similar); *see also Bush v. Phila. Redevelopment Auth.*, 2022 WL 17691563, at *1 n.5 (3d Cir. Dec. 15, 2022) (citing *Winget*, 537 F.3d at 573, with approval on other *res judicata* grounds); *In re Old BBP, Inc.*, 2020 WL 7074642, at *8 n.49 (Bankr. D. Del. Dec. 1, 2020) (citing *Winget*, 537 F.3d at 579) (holding that sale order barred requested relief under *res judicata* doctrine).

Indeed, in this case, Citiking appealed the Sale Order to the District Court and the Third Circuit. *See* D.I. 1068; D.D.A.I. 4; C.A.3. D.I. 1. Citiking argued in those appeals—as its successor-in-interest Diligent argues here—that the "sales process was fundamentally flawed" and it was deprived of its purported right to credit bid. D.D.A.I. 4 ¶¶ 1-2, 29; *see* C.A.3. D.I. 5 at 2. Citiking's appeals were dismissed *in toto*, leaving the Sale Order undisturbed. The Sale Order, thus, remains a final judgment on the merits.

2.      <u>AML Global and Diligent Have Been Parties to Both Actions for Preclusion Purposes</u>

"[C]laim preclusion applies to the claims of a party who asserts any claim in an action, even where the party is not the original plaintiff." *CoreStates*, 176 F.3d at 200. The other parties to the claim include those who have opposing interests, that is, are the claimant's "adversaries in fact." *Id.* For example, in *CoreStates*, the Third Circuit found that a creditor's objection to a proposed plan of reorganization "can be a claim against other creditors, as well as the debtor, for claim preclusion purposes." *Id.* at 201. Accordingly, in this case, Citiking's objections to the Sale Motion constituted a claim against the Debtors, as the sellers, and AML Global, as the buyer.

Further, Citiking assigned its purported claims (including the causes of action asserted against AML Global in the Complaint) to Diligent. Compl. ¶ 1. Thus, Citiking and Diligent are privities. *See Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc.*, 292 F.3d 384, 392-93 (3d Cir. 2002) (quoting *Mandeville & Jameson v. Joseph Riddle & Co.*, 5 U.S. (1 Cranch) 290, 298 (1803)) ("There is a privity between the assignor and his immediate assignee").

3.      <u>Citiking Pursued the Same Cause of Action Against AML Global in the Prior Action That Diligent Seeks to Pursue Here</u>

Courts considering whether two suits are based on the same cause of action must "take a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *CoreStates*, 176 F.3d at 194. This is not a mechanical test, *see Sims v. Viacom Inc.*, 544 F. App'x 99, 102 (3d Cir. 2013), but rather a consideration of the totality of the circumstances, *see In re Samson Res. Corp.*, 2021 WL 1174534, at *8 (D. Del. Mar. 29, 2021). Notably, "[i]t is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Gupta v. Wipro Ltd.*, 749 F. App'x 94, 96 (3d Cir. 2018).

There is an essential similarity between the underlying events that gave rise to Citiking's objections to the Sale Order (and other litigation in the Main Bankruptcy Case, as described above) and the allegations against AML Global in the Complaint. Indeed, the similarity between the claims "is facially apparent." *CoreStates*, 176 F.3d at 206. Citiking claimed and Diligent claims that the sale process for the Eclipse light jet assets was unfair. Citiking objected, *inter alia*, that Debtors' bidding procedures required all bidders to provide a cash consideration deposit, which, according to Citiking, denied Citiking its purported right to credit bid. *See* D.I. 1070 (Sale Hearing) at 33:22-34:5; D.D.A.I. 4 ¶¶ 2, 29; C.A.3. D.I. 1 at 17:1-18. Diligent advances those same grievances here. *See* Compl. ¶¶ 68, 80-82, 112, 119.

It makes no difference that Diligent re-casts Citiking's objections as tortious interference and civil conspiracy claims. *See Wipro*, 749 F. App'x at 96; *see also CoreStates*, 176 F.3d at 206 (explaining that "the 'same cause of action' requirement relates to the factual circumstances underlying the claims, not their legal basis."); *Radnor*, 564 B.R. at 483 (similar). Nor can Diligent escape the effects of claim preclusion by relying on AML Global's purchase of debt from DWC Pine. That transaction was disclosed during the Sale Hearing. D.I. 1070 at 14:14–21; *see also* D.I. 1063 ¶ S (finding, concluding, and determining that "all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed"). Citiking, therefore, had an opportunity to incorporate the debt purchase into its objection and it failed to avail itself of that opportunity. Claim preclusion applies equally to claims that could have been raised in a prior action, even if the plaintiff fails to actually raise them. *See CoreStates Bank*, 176 F.3d at 199. Moreover, Diligent's debt purchase allegations all redound to the purported unfairness of the sale process. *See, e.g.*, Compl. ¶¶ 82, 112, 120. As such, these claims, too, relate to the factual circumstances underlying Citiking's objection.

Since all three elements of claim preclusion are satisfied, the Complaint's claims against AML Global must be precluded.

### C.  Issue Preclusion Bars Plaintiff's Claims Against AML Global

Issue preclusion requires that: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (quoting *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir. 1995)); *In re Radnor Holdings Corp.*, 564 B.R. at 483. These elements are satisfied with respect to the issue of the sufficiency of the sale process for Debtors' assets and Citiking's purported right to credit bid for those assets.

### 1.  The Sufficiency of the Sale Process was Previously Adjudicated in the Main Bankruptcy Case

"Issues are identical for collateral estoppel purposes where 'the issues presented by [the current] litigation are in substance the same as those resolved' in the previous litigation." *Nat'l Med. Imaging, LLC v. Ashland Funding LLC*, 648 F. App'x 251, 256 (3d Cir. 2016) (quoting *Montana,* 440 U.S. at 155). Citiking essentially conceded this element of the issue preclusion analysis when it alleged in its July 2021 Objection to AML's Claim that DWC Pine's disclosure to this Court of the sale of its interest in Debtors' debt to AML Global "raises questions concerning the integrity and transparency of the Sale process." D.I. 1224*. ¶ 23; see also id.* ("Does DW's agreement to sell its debt to AML constitute collusion under 363(n)?").

Even so, Plaintiff attempts to avoid the findings and decrees made by this Court in the Sale Order by collaterally raising issues that are, in substance, the same as those resolved during the sale process. Specifically, Diligent reasserts through the Complaint allegations and arguments that

have been heard, considered, and rejected by this Court, the Delaware District Court, and the Third Circuit. Citiking fully litigated and lost on its objection that the sales process for Debtors' assets was deficient and supposedly vitiated Citiking's right under bankruptcy law to credit bid. Indeed, this Court "found, concluded, and determined" that AML Global was a good faith buyer with the best offer and the transaction was not "undertaken for the purpose of hindering, delaying, or defrauding any creditors[.]" D.I. 1063 ¶¶ P-S, V. This Court further "ordered, adjudged, and decreed" that AML Global did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets[.]" *Id.* ¶ 45. Citiking appealed—and neither the Delaware District Court nor the Third Circuit disturbed the Sale Order.

Diligent now alleges that AML Global engaged in a shadowy "multi-layer conspiracy" that purportedly led to the formation of some vague "undisclosed[] side deal" aimed at eliminating Citiking's right to credit bid (on assets Citiking could have bought at any time in the preceding nearly two years) and securing for AML Global some of Debtors' assets "for pennies on the dollar[.]" Compl. ¶¶ 80-85; *see also id.* ¶¶ 112, 115, 119. Plaintiff's collusion allegations are not only outlandish, but directly contrary to, and impossible to square with, the Sale Order entered by this Court. *See In re Farmland Indus., Inc.*, 376 B.R. 718 (Bankr. W.D. Mo. 2007) (holding that first element of collateral estoppel is satisfied where "relief cannot be granted on [plaintiff's] complaint without overruling numerous findings from the Sale Orders."), *aff'd,* 408 B.R. 497 (B.A.P. 8th Cir. 2009); *see also Food King, Inc. v. Norkus Enters., Inc.*, 2006 WL 3674997, at *6 (D.N.J. Dec. 13, 2006) (holding that tortious interference claim was precluded by sale order because seeking a finding that the buyer's and other's conduct "was malicious, fraudulent, or a violation of [plaintiff's] rights" necessarily asked court "to question the validity of the actual sale").

2.      The Sufficiency of the Sale Process Was Actually Litigated in the Main
         Bankruptcy Case

"In determining whether the resolution [in the first action] was sufficiently firm, the second

court should consider whether the parties were fully heard, whether a reasoned opinion was filed,

and whether that decision could have been, or actually was, appealed." *In re Brown*, 951 F.2d 564,

569-70 (3d Cir. 1991) (holding "issue preclusion [wa]s appropriate" where "issues were genuinely

contested"). These considerations all militate in favor of finding the sufficiency of the sale process

and Citiking's purported right to credit bid were actually litigated in the Main Bankruptcy Case.

Counsel for Citiking was present at the Sale Hearing and permitted to object and offer

extensive argument in opposition to the sale. *See* D.I. 1070 (Sale Hearing Tr.) at 32:19-40:4; *see*

*In re Summit Metals, Inc.*, 477 B.R. 484, 500-01 (Bankr. D. Del. 2012) (holding that issue

preclusion applied, in part, because plaintiff's counsel was present at hearings in prior action

regarding collaterally attacked at-issue sale orders). Among other objections, Citiking argued that

"the debtors cannot show that they received market value for their assets because they did not

create a fair market. . . . They've not shown a fair process. . . . and they have effectively denied

their secured creditor the right to credit bid, in violation of 363(k), by virtue of the process that

they run." D.I. 1070 at 36:10-16. This Court considered and addressed Citiking's objections. D.I.

1070 at 48:9-51:15; *see Summit Metals*, 477 B.R. at 500 (holding that issue preclusion applied, in

part, because original court addressed plaintiff's arguments and explained why it ruled for the other

party). This Court then overruled those objections and approved the sale. *Id.* at 51:16-17. The Sale

Order specifically provided that AML Global was a good faith buyer and that AML Global did

"not collude[] with any of the other bidders, potential bidders, or any other parties interested in the

Purchased Assets[.]" D.I. 1063 ¶¶ P-S, 45.

Citiking appealed this Court's decision to the District of Delaware, and thereafter to the Third Circuit. *See* D.D.A.I. 1; C.A.3. D.I. 1. On appeal, Citiking—once again—argued that it "ha[d] an affirmative right to credit bid and the way this sales process occurred, we never had an opportunity to do that." C.A.3. D.I. 1, Ex. A at 17:2-3; *see also id.* at 20:22-21:1 (counsel for Citiking arguing that, "by running the sale process in the way they did," Citiking "ha[d] been de facto deprived of [] ability" to credit bid). Diligent now seeks to relitigate precisely the same issue in this action. *See, e.g.*, Compl. ¶¶ 82 (alleging conspiracy "designed to freeze Citiking out by stripping it of its ability to credit bid"), 112 (alleging collusion between AML Global and DWC Pine "to effectively freeze Citiking out of the bidding process by eliminating the opportunity to credit bid"), 119 (alleging scheme between AML Global and DWC Pine "whereby they sought to eliminate Citiking's right to credit bid").

3.    <u>This Court's Determination That the Sale Process Was Sufficient Was Necessary to This Court's Approval of the Sale Motion</u>

"[T]he 'essential' requirement is 'rooted in principles of fairness' because issues that the court and parties view as necessary to a judgment will be litigated vigorously and receive close judicial attention." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. (UAW) v. Visteon Corp.*, 2015 WL 4126742, at *6 (D. Del. July 9, 2015). The sufficiency of the sale process in general, and Citiking's purported right to credit bid in particular, were essential and necessary ingredients to this Court's ultimate decision to enter the Sale Order.

First, as described *supra* § I.C.2, these matters were vigorously litigated by Citiking.

Second, this Court would not have approved the Sale Motion if it had concluded that the sale process was insufficient or that Citiking was impermissibly deprived of its purported right to credit bid in violation of Section 363(k) of the Bankruptcy Code. Moreover, during the Sale

Hearing, it was disclosed that (i) because AML Global deposited "their entire cash purchase price into escrow," Debtors had decided to require a total cash consideration deposit to ensure all bids were credible, *see* D.I. 1070 at 44:21-45:2; and (ii) DWC Pine agreed to sell its debt to AML Global, *id.* at 14:14–21. This Court could not have found that AML Global was a good faith purchaser and did "not collude[] with any of the other bidders, potential bidders, or any other parties interested" in the Eclipse light jet assets if it had concluded that these matters formed a "multi-layer conspiracy . . . designed to freeze Citiking out by stripping it of its ability to credit bid . . . and allow AML to purchase the Debtors' assets at a theoretical 'face value' far below market value." Compl. ¶ 82. These allegations are categorically inconsistent with this Court's findings in the Sale Order. *See also In re Veg Liquidation, Inc.*, 931 F.3d 730, 737 (8th Cir. 2019) (holding that complaint "amount[ed] to an impermissible collateral attack" on a sale order where it alleged the buyer won the auction "with an overvalued bid that was supported by an undisclosed agreement between an unsecured creditor and the second lienholders").

4.    Diligent's Interests Were Fully Represented in the Main Bankruptcy Case

Diligent was fully represented in the Main Bankruptcy Case because it stands in privity with Citiking. *See supra*, § I.B.2.

In sum, because the elements of issue preclusion are satisfied, Plaintiff cannot be permitted to relitigate the sufficiency of the sale process or Citiking's purported right to credit bid.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST AML GLOBAL

A three-part analysis governs whether a complaint is sufficient to withstand a motion to dismiss for failure to state a claim. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327-28 (3d Cir. 2022). "First, the court 'must take note of the elements a plaintiff must plead to state a claim.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). "Finally, 'when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).

The plausibility pleading standard demands that the complaint must "nudge[] [Plaintiff's] claims across the line from conceivable to plausible[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the plausibility analysis "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly*, 809 F.3d at 786. "A complaint which pleads facts merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement of relief." *Burtch*, 662 F.3d at 221 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly*, 809 F.3d at 786-87.

In addition to the pleadings, a court may consider public records, orders, exhibits attached to the pleading, and documents incorporated into the pleading by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). A court may take judicial notice of filings in the main bankruptcy case, as well as testimony from evidentiary hearings in the main bankruptcy case. *See White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 502 B.R. 416, 424 (Bankr. D. Del. 2013). A court is not bound to accept the truth of allegations that are contradicted by facts in any of these permitted supplemental sources. *See Wipro*, 749 F. App'x at 97; *In re Washington Mut., Inc.*, 2010 WL

3238903, at *14 (Bankr. D. Del. Aug. 13, 2010) (declining to accept as true allegations that were "not plausible in light of the public record."), *aff'd*, 2017 WL 2256965 (D. Del. May 23, 2017), *aff'd*, 741 F. App'x 88 (3d Cir. 2018).

For the reasons that follow, the well pleaded allegations in the Complaint against AML Global fail to state a plausible claim for relief and, therefore, should be dismissed.

### A.   Choice of Law Rules Dictate Delaware Substantive Law Applies.

It is well established that a "change of venue under [28 U.S.C. §] 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Bankers Tr. Co. of W. New York v. Crawford*, 781 F.2d 39, n. 3 (3d Cir. 1986) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see also Stokes v. Markel Am. Ins. Co.*, 595 F. Supp. 3d 274, 284 (D. Del. 2022) ("Where, as here, a civil case has been transferred from one district court to another pursuant to § 1404(a), the transferee court applies the law of the transferor state, including its choice-of-law rules, as if there had been no change of venue."). This principle extends to actions, such as this one, that have been transferred under 28 U.S.C. § 1412, as transfers under both statutes are "merely 'judicial housekeeping measure[s]' that allow for a change of courtrooms but not of law." *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 89 F. Supp. 3d 599, 601 (S.D.N.Y. 2015) (quoting *Van Dusen*, 376 U.S. at 636). The choice of law rules of New York, the transferor state, therefore apply.

New York's choice-of-law rules prescribe that Delaware substantive law governs the claims against AML Global. New York applies the "most significant interest" analysis to tort claims if there is an "actual conflict" between the jurisdictions' substantive laws. *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993); *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999). The analysis is necessary here because there is an actual conflict between Delaware and New York law concerning both tortious interference with contract and civil conspiracy. *See, e.g.*,

*Manbro Energy Corp. v. Chatterjee Advisors, LLC,* 2021 WL 2037552, at \*2 (S.D.N.Y. May 21, 2021) (finding actual conflict between New York and Delaware law on tortious interference with contract); *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 262 (S.D.N.Y. 2012) (tortious interference with contract can form basis for civil conspiracy under New York law); *Lamplugh v. PBF Energy*, 2020 WL 434204, at \*4 (D. Del. Jan. 28, 2020) (tortious interference with contract cannot form basis for civil conspiracy under Delaware law).

The most significant interest analysis is a "flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 337 (2d Cir. 2005) (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)). Courts look to factors including "the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered." *AllGood Ent., Inc. v. Dileo Ent. & Touring, Inc.*, 726 F. Supp. 2d 307, 315 (S.D.N.Y. 2010).

These factors dictate that Delaware law applies. As Judge Caproni found: "As alleged in the State Complaint, ***the relevant events largely occurred in Delaware***, where AML and Diligent purportedly conspired to deny Citiking its right to credit bid, and the bankruptcy proceedings remain ongoing." D.D.I. 60, Opinion and Order at 20. Further, Plaintiff and AML Global are both limited liability companies "organized and existing under the laws of Delaware." Compl. ¶¶ 1–2. Delaware's substantive law therefore applies to Plaintiff's tortious interference with contract and civil conspiracy claims.

**B.      The Complaint Fails to Adequately Plead Tortious Interference with Contract.**

A party alleging tortious interference with an existing contract must show "(1) a contract, (2) about which defendant knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) which causes injury." *Aclate, Inc v. Eclipse Mktg. LLC*, 2020 WL 6158579, at *4 (D. Del. Oct. 21, 2020) (quoting *Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987)). Notably, "courts have tended to narrowly circumscribe the scope of this tort" to avoid chilling competition in the marketplace. *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 589 (Del. Ch. 1994).

As relevant to both the tortious interference and civil conspiracy claims, the allegations in paragraphs 62, 80-82, 110-113, 116, and 115-120 of the Complaint should be disregarded because they are "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *Lutz*, 49 F.4th at 328. This Court should disregard the allegations in paragraphs 67-68, 82, 112, 115, and 119-20 for the additional reason that they are contradicted by facts contained in the filings of the Main Bankruptcy Case. For example, contrary to Plaintiff's allegations, the Revised Bidding Procedures ***did not*** eliminate credit bidding. Rather, the Revised Bidding Procedures required each bidder to disclose the amount and mix of consideration, make a $500,000 good-faith deposit, and escrow the total amount of cash consideration contemplated by that bidder's bid. *See* D.I. 1040. And far from being frozen out of the bidding, Citiking never even attempted to exercise its purported right to credit bid—it never submitted a bid at all. *See, e.g.*, C.A.3. D.I. 5 at 20 (Citiking arguing that Citiking did not have time to prepare a bid notwithstanding multiple adjournments).

Accordingly, the only factual allegations contained in the Complaint concerning AML Global are that (i) Debtors' third sale motion identified AML Global as the stalking horse bidder,

Compl. ¶ 63; (ii) on or around November 10, 2020, AML Global voluntarily increased its cash deposit to the full purchase price, which remained subject to higher and better offers, Compl. ¶ 66; and (iii) during the sale hearing on November 20, 2020, counsel for DWC Pine disclosed that AML Global had agreed to purchase DWC Pine's secured debt, subject to entry of the sale order, Compl. ¶¶ 71-72. These facts fall far "short of the line between possibility and plausibility of entitlement of relief," *Burtch*, 662 F.3d at 221, nor do they come anywhere near being able to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

Specifically, properly setting aside the Complaint's conclusory statements and statements that contradict the record of the Main Bankruptcy Case, there are no well-pleaded allegations in the Complaint that AML Global (i) knew about the Intercreditor Agreement or the right of first refusal purportedly contained therein; (ii) colluded or conspired with DWC Pine; or (iii) acted improperly when it increased its cash deposit to the full purchase price or when it purchased DWC Pine's secured debt. Plaintiff cannot overcome the additional hurdle that issue preclusion bars relitigating whether there was collusion that affected the sufficiency of the sale process and, without those allegations, the Complaint is bereft of any allegations that AML Global committed an intentional act that was a significant factor in causing a breach of the Intercreditor Agreement.

Additionally, the Complaint fails to provide any factual support justifying its damages claim. Rather, the amount of claimed damages is premised on payments Citiking purportedly made to DWC Pine ***more than a year before*** AML Global's allegedly tortious conduct. *See* Compl. ¶ 113 (damages based on "amount that Citiking paid for the purchase of the Second Tranche Loans").

In sum, the Complaint fails to adequately allege the tortious interference elements of knowledge, an intentional act, acting without justification, or damages. The tortious interference claim must be dismissed.

### C.     The Complaint Fails to Adequately Plead Civil Conspiracy.

"The elements for civil conspiracy under Delaware law are: (1) a confederation or combination of two or more persons; (2) an unlawful act done in furtherance of the conspiracy; and (3) actual damage." *Gillis v. Toliver*, 2005 WL 2464991, at *5 (D. Del. Oct. 6, 2005) (quoting *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, n.8 (Del. 2005)). The civil conspiracy count of the Complaint must be dismissed because it cannot satisfy the second element of this cause of action in two primary respects.

*First,* because Plaintiff fails to adequately allege tortious interference with contract (*see supra* § II.B), its derivative civil conspiracy claim also fails. "Civil conspiracy is not an independent cause of action; it must be predicated on an underlying wrong." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 892 (Del. Ch., 2009). Accordingly, where, as here, the "plaintiff fails to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed." *Id.*; *see Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 532 (D. Del. 2012) (dismissing conspiracy claim after concluding underlying tort claim could not move forward).

*Second,* even if the Complaint adequately pleaded tortious interference against AML Global (it does not), tortious interference with contract cannot serve as the predicate wrong for a civil conspiracy claim. *Lamplugh*, 2020 WL 434204, at *4 ("[T]ortious interference with a contract claim cannot form the basis for civil conspiracy."). As Vice Chancellor Glasscock of the Delaware Chancery Court explained in *American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*,

recognizing "such a round-about claim" as civil conspiracy premised on tortious interference with contract and contractual breach "would circumvent the limitations on tort liability that are a *fundamental aspect* of Delaware law." 2014 WL 354496, at *11 (Del. Ch. Feb. 3, 2014) (quoting *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009)). As such, "[a]lthough the elements of a claim for civil conspiracy are flexible, it is essential that there be an underlying wrongful act, such as a tort or a statutory violation." *NACCO*, 997 A.2d at 35; *see also Kuroda*, 971 A.2d at 892 (dismissing conspiracy claim because "[n]one of the acts alleged in the complaint," including tortious interference with contract, "constitute an underlying wrong on which a claim of conspiracy could be based."). Because Plaintiff fails to plead any purported underlying wrong committed by AML Global—aside from the legally insufficient alleged tortious interference with the Intercreditor Agreement, *see* Compl. ¶¶ 115-21—the civil conspiracy claim fails.[5]

## CONCLUSION

For the foregoing reasons, AML Global requests that the Court enter an order substantially in the form attached to the Motion as **Exhibit A** dismissing the counts of the Complaint against AML Global with prejudice and permanently enjoin Plaintiff from again filing a case arising from the facts underlying this Adversary Proceeding.[6]

---

[5] The Complaint also fails to satisfy the first element of a civil conspiracy claim because the alleged "confederation or combination" in this case is DWC Pine and AML Global—but, as a party to the Intercreditor Agreement, DWC Pine "cannot, as a matter of law, tortiously interfere with that contract." *CrewFacilities.com, LLC v. HotelEngine, Inc.*, 2021 WL 2649758, at *5 (D. Del., 2021). Since, even for the sake of argument, AML Global cannot civilly conspire on its own, this claim cannot survive a motion to dismiss.

[6] AML Global reserves the right to seek at the appropriate juncture costs, attorneys' fees, and expenses pursuant to 11 U.S.C. § 105(a), Bankruptcy Rules 7054 and 9011, this Court's inherent sanctioning authority, or any other and further grounds that may be available.

Dated:    October 6, 2025

PACHULSKI STANG ZIEHL & JONES LLP
By:    */s/ Mary F. Caloway*
Laura Davis Jones (DE Bar No. 2436)
Mary F. Caloway (DE Bar No. 3059)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
    mcaloway@pszjlaw.com


FRIED FRANK HARRIS, SHRIVER &
JACOBSON LLP
Michael C. Keats (*pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: michael.keats@friedfrank.com

*Counsel for Defendant*
*AML Global Eclipse, LLC*