## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ONE AVIATION CORPORATION, *et al.*,<br><br>Debtors. | Chapter 7<br>Case No. 18-12309 (JKS)<br><br>Jointly Administered |
| DILIGENT ENTERPRISE MANAGEMENT, LLC,<br><br>Plaintiff,<br><br>- against -<br><br>AML GLOBAL ECLIPSE, LLC, DWC PINE INVESTMENTS I, LTD., ALAN KLAPMEIER, JAMES CARROLL, STEVE SERFLING, RJ SIEGLE, and MIKE WYSE,<br><br>Defendants. | Adv. Pro. No. 25-52065 (JKS) |

### DEFENDANT AML GLOBAL ECLIPSE LLC'S REPLY MEMORANDUM
### IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
Michael C. Keats (*pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: michael.keats@friedfrank.com

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Mary F. Caloway (DE Bar No. 3059)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
 mcaloway@pszjlaw.com

*Counsel for Defendant*
*AML Global Eclipse, LLC*

Dated: November 24, 2025

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

INTRODUCTION ..................................................................................................1

ARGUMENT........................................................................................................2

I.      THE CLAIMS AGAINST AML GLOBAL ARE BARRED AND PRECLUDED ...........2

        A.      The Law of the Case Applies. ...........................................................2

        B.      Claim Preclusion Applies....................................................................3

        C.      Issue Preclusion Applies. ...................................................................4

II.     DILIGENT FAILED TO STATE A CLAIM ...................................................5

        A.      Delaware Law Governs Plaintiff's Claims........................................5

                1.      AML Global Is Not Bound By Choice of Law Provisions In Contracts To
                        Which It Is Not A Party............................................................5

                2.      Delaware Law Applies Under New York's Interest Analysis. ...................5

        B.      Plaintiff's Tortious Interference Claim Fails Under Delaware Law.....................7

        C.      Plaintiff's Conspiracy Claim Fails Under Delaware Law...................10

        D.      Plaintiff's Tortious Interference Claim Fails Under New York Law. .................11

        E.      Plaintiff's Conspiracy Claim Fails Under New York Law. ...............15

CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acrisure, LLC v. Woodruff-Sawyer & Co.,*
    84 Misc. 3d 1262(A) (Sup. Ct. N.Y. Cnty. Dec. 30, 2024) ..................................................13

*American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.,*
    2014 WL 354496 (Del. Ch. Feb. 3, 2014) ...........................................................................10

*In re Am. Express Co. S'holder Lit.,*
    39 F.3d 395 (2d Cir. 1994). ...............................................................................................14

*Automated Precision, Inc. v. Pare,*
    631 F.Supp.3d 185 (D. Del. 2022) .......................................................................................7

*Better Holdco, Inc. v. Beeline Loans, Inc.,*
    666 F.Supp.3d 328 (S.D.N.Y. 2023) .............................................................................13, 15

*BV Advisory Partners, LLC v. Quantum Computing Inc.,*
    2024 WL 2723119 (Del. Ch. May 28, 2024) .......................................................................9

*Carvel Corp. v. Noonan,*
    818 N.E.2d 1100 (N.Y. 2004) .............................................................................................5

*Clouser v. Doherty,*
    2017 WL 3947404 (Del. Sept. 7, 2017) .............................................................................11

*Conaway v. McAfee-Garner,*
    2020 WL 6445895 (D. Del. Nov. 3, 2020) ...........................................................................7

*CoreStates Bank, N.A. v. Huls Am., Inc.,*
    176 F.3d 187 (3d Cir. 1999) ...........................................................................................3, 4

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.,*
    546 F.Supp.3d 204 (W.D.N.Y. 2021) ................................................................................12

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.,*
    770 F.Supp.2d 627 (S.D.N.Y. 2011) ..................................................................................15

*E.E.O.C. v. Waffle House, Inc.,*
    534 U.S. 279 (2002) ...........................................................................................................5

*Eastern Minerals & Chemicals Co. v. Mahan,*
    225 F.3d 330 (3d Cir. 2000) ...............................................................................................3

*In re F-Squared Inv. Mgmt., LLC*,
   2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) ................................................7

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
   414 F.3d 325 (2d Cir. 2005) ..................................................................................6

*Fritz v. Cnty. of Westmoreland*,
   2024 WL 808970 (3d Cir. Feb. 27, 2024) ..............................................................2

*Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*,
   676 F.Supp.3d 233 (S.D.N.Y. 2023) ......................................................................5

*Gan v. GSUIG Real Est. Member LLC*,
   2025 WL 2416950 (E.D.N.Y. Aug. 21, 2025)........................................................13

*Gold Medal Farms, Inc. v. Rutland County Co-op. Creamery, Inc.*,
   9 A.D. 2d 473 (3d Dep't 1959) ............................................................................12

*HREF Senior Worthington LLC v. Conroe WM LLC*,
   2025 WL 2807010 (Del. Ch. Oct. 2, 2025) ............................................................5

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ................................................................................15

*KT4 Partners LLC v. Palantir Techs. Inc.*,
   2021 WL 2823567 (Del. Super. Ct. June 24, 2021)..............................................10

*In re La Paloma Generating Co., LLC*,
   2020 WL 224569 (Bankr. D. Del. Jan. 13, 2020)....................................................2

*Lamplugh v. PBF Energy*,
   2020 WL 434204 (D. Del. Jan. 28, 2020) ............................................................10

*Lutz v. Portfolio Recovery Assocs., LLC*,
   49 F.4th 323 (3d Cir. 2022) ................................................................................11

*Medtech Prods. Inc. v. Ranir, LLC*,
   596 F.Supp.2d 778 (S.D.N.Y. 2008)............................................................... 12, 15

*N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*,
   2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013) ......................................................15

*NACCO Indus., Inc. v. Applica Inc.*,
   997 A.2d 1 (Del. Ch. 2009) ................................................................................10

*Pentacon BV v. Vanderhaegen*,
   725 F.Supp.3d 350 (S.D.N.Y. 2024)................................................................. 5, 15

*In re Prosser*,
    534 F.App'x 126 (3d Cir. 2013) ..........................................................................................4

*Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE*,
    2025 WL 1827274 (S.D.N.Y. July 2, 2025)................................................................. 13, 14

*RSM Prod. Corp. v. Fridman*,
    643 F.Supp.2d 382 (S.D.N.Y. 2009) .................................................................. 12, 13, 14

*Taboola, Inc. v. Ezoic Inc.*,
    2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020) ....................................................................12

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*,
    694 F.Supp.3d 467 (D. Del. 2023) ......................................................................................7

*Titan Cap. ID, LLC v. Axos Bank*,
    2025 WL 2771873 (S.D.N.Y. Sept. 29, 2025)...................................................................13

*Tolliver v. Trinity Par. Found.*,
    2017 WL 3288119 (D. Del. Aug. 2, 2017)..........................................................................11

*UbiquiTel Inc. v. Sprint Corp.*,
    2005 WL 3533697 (Del. Ch. Dec. 14, 2005)......................................................................10

*Watkins v. Int'l Union, Sec., Police & Fire Pros. of Am.*,
    2016 WL 1166323 (D. Del. Mar. 23, 2016).......................................................................11

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*,
    49 A.3d 1168 (Del. 2012)......................................................................................................9

*Zuckerman v. Metro. Museum of Art*,
    307 F.Supp.3d 304 (S.D.N.Y. 2018)...................................................................................6

# INTRODUCTION[1]

In its Opposition to the Motion, A.D.I. 10, Plaintiff concedes the dispositive issue that disposes of the tortious interference and civil conspiracy claims pressed here against AML Global. "[T]his Court entered a *Sale Order* providing that AML was a 'good faith purchaser' of *the Debtor's* assets pursuant to 11 U.S.C. § 363(m)." A.D.I. 10 at 27 (emphasis in original); *see also id.* at 29 ("This Court held … that AML was a good-faith purchaser."). Plaintiff feigns ignorance to dispute the significance of this admission. But its import is clear: Plaintiff's tortious interference and civil conspiracy claims—premised on conclusory allegations that AML Global conspired and colluded with DWC Pine to "allow AML to purchase the Debtors' assets at a theoretical 'face value' far below market value" (Compl. ¶82)—are mutually exclusive with this Court's finding that AML Global was a good-faith purchaser. As such, the law of the case, claim preclusion, and issue preclusion doctrines each bar Plaintiff from ***once again*** contesting the sufficiency of the sale process presided over by this Court, which has already been considered and decided favorably to AML Global by this Court, the District Court, and the Third Circuit.

AML Global must be dismissed from this action for the further reason that the Complaint fails to adequately plead tortious interference with contract and civil conspiracy. Delaware law applies here, but the same result obtains under either Delaware or New York law. Plaintiff fails to plausibly allege several essential elements of tortious interference, including (but not limited to) knowledge, intent, and damages. The civil conspiracy claim, which relies on the existence of a

---

[1] References herein to documents in the Main Bankruptcy Case will be cited as "D.I.", those in the Adversary Proceeding will be cited as "A.D.I."; those in the appeal to the District of Delaware, Case No. 201569-CFC, will be cited as "D.D.A.I."; and those in the appeal to the United States Court of Appeals for the Third Circuit, Case No. 2003406, will be cited as "C.A.3 D.I." and those in the transferred case to the District of Delaware, Case No. 25-689-CFC, will be cited as "D.D.I." All citations, internal quotations, and alterations are omitted unless otherwise noted. Emphasis is added in bold italics and alternations are in brackets. Defined terms retain their meaning from the Motion.

predicate tort, falls together with the tortious interference claim. The claim is infirm under the law of both jurisdictions for additional reasons, as explained more fully herein.

In sum, whether on preclusion or failure to state a claim grounds, it is clear that Plaintiff's claims against AML Global must finally be put to rest and dismissed with prejudice.

## ARGUMENT

## I.    THE CLAIMS AGAINST AML GLOBAL ARE BARRED AND PRECLUDED

### A.    The Law of the Case Applies.

Plaintiff admits that the law of the case doctrine "applies to *issues* that were actually litigated and decided by the court," A.D.I. 10 at 29, and further concedes that this Court has already held that "AML was a good-faith purchaser," *id.* (citing D.I. 1063 (Sale Order) ¶¶44-45). These concessions end the analysis: this Court's finding that AML Global was a good faith purchaser triggered the law of the case doctrine. *See In re La Paloma Generating Co., LLC*, 2020 WL 224569, at *3 (Bankr. D. Del. Jan. 13, 2020) (law of the case "applies to factual findings made in a main bankruptcy proceeding and is binding on parties to a subsequent adversary proceeding."). The doctrine, in turn, forecloses Plaintiff's tortious interference and conspiracy claims against AML Global because the allegations underlying those claims are incompatible with the fact that "AML was a good-faith purchaser" (A.D.I. 10 at 29) that did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets," D.I. 1063 ¶¶44, 45.

Nor is this an appropriate case for the Court to exercise its discretion to "rehear matters ad nauseum." A.D.I. 10 at 30. As a general rule, "courts should be loathe" to reconsider prior decisions, particularly absent "extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." *Fritz v. Cnty. of Westmoreland*, 2024 WL 808970, at *4 (3d Cir. Feb. 27, 2024). Plaintiff fails to identify any such extraordinary circumstances here.

B.      **Claim Preclusion Applies.**

Plaintiff does not dispute that the Sale Order was a final judgment on the merits involving the same parties or their privities. *See generally* A.D.I. 10 at 30-34. Thus, the only disputed claim preclusion element is whether this proceeding and the prior proceeding are "based on the same cause of action." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).

Plaintiff relies heavily on *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330 (3d Cir. 2000), to argue that its claims against AML Global "are not 'so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.'" A.D.I. 10 at 32. But, in fact, *Eastern Minerals* supports the application of claim preclusion here. In *Eastern Minerals*, in the main bankruptcy action, the party opposing preclusion (Eastern Minerals) in the later action circulated a draft complaint against a third entity called Millington that described the allegedly offensive conduct of the party seeking preclusion in the later action (Mahan). *Id.* at 333. The court reasoned that claim preclusion did not apply because the relief sought in the draft complaint (*i.e.,* to place **Millington** at the back of the creditor line) was "markedly different" than that sought later (*i.e.,* to hold **Mahan** personally liable for debtor's debts under an alter ego theory). *Id.* at 338. In contrast, the purported factual underpinnings and Plaintiff's theory of the case in both the Main Bankruptcy Case and here is the "sales process was fundamentally flawed" and Citiking was deprived of its purported right to credit bid. *See* D.I. 1070 (Sale Hearing) at 33:22-34:5; D.D.A.I. 4 ¶¶2, 29; C.A.3. D.I. 1 at 17:1-18; Compl. ¶¶68, 80-82, 112, 119. The relief sought is also functionally the same. Previously, Citiking tried to block the sale of Debtors' assets to AML Global. Plaintiff now seeks to undo the economics of the sale because Citiking was purportedly harmed by collusion between AML Global and DWC

3

Pine, which allegedly permitted "AML [to] purchase[] the Debtors' assets at a fraction of their value" (Compl. ¶¶112, 121).

Moreover, Plaintiff's attempt to limit *CoreStates Bank, N.A* fails. There, the Third Circuit held that claim preclusion applies where, based on a totality of the circumstances, "there is an essential similarity of the underlying events giving rise to the various legal claims." 176 F.3d at 200. As described above, the claims in both cases challenge the sale process based on the alleged unfairness of Citiking purportedly being unable to credit bid. As such, the similarity between the claims "is facially apparent," *CoreStates,* 176 F.3d at 206, and claim preclusion applies.

### C.   Issue Preclusion Applies.

Plaintiff admits that "the sale process was litigated and adjudicated," but feigns ignorance to assert that issue preclusion does not apply because "AML fails to explain how" "Diligent's claims are 'directly contrary to, and impossible to square with, the Sale Order entered by this Court.'" A.D.I. 10 at 35.[2] But the irreconcilable tension is clear. Plaintiff's tortious interference and conspiracy claims allege that "AML and DW were colluding with one another to effectively freeze Citiking out of the bidding process" and "devised a scheme whereby they sought to eliminate Citiking's right to credit bid and did so by violating the rights owed to Citiking under the Intercreditor Agreement." Compl. ¶¶112, 119. These allegations amount to an impermissible collateral attack on the Sale Order's findings that AML Global was a good-faith purchaser and did "not collude[] with any of the other bidders, potential bidders, or any other parties interested in the Purchased Assets[.]" D.I. 1063 ¶¶P-S, V, 44-45; *see* Compl. ¶63 (alleging DWC Pine considered submitting a bid for Debtors' assets); *see also* A.D.I. 7 (AML Motion to Dismiss Compl.) at 24-27 (collecting cases).

---

[2] *In re Prosser* is inapposite, as that court emphasized the key issue in the later action had been scrupulously avoided in the earlier case. *See In re Prosser*, 534 F.App'x 126, 129 (3d Cir. 2013) (cited at A.D.I. 10 at 34).

## II.  DILIGENT FAILED TO STATE A CLAIM

### A.  Delaware Law Governs Plaintiff's Claims.

#### 1.  AML Global Is Not Bound By Choice of Law Provisions In Contracts To Which It Is Not A Party.

Plaintiff argues that "New York law applies to Diligent's claims" because agreements ***to which AML Global is not and never has been a party*** contain New York choice of law provisions. *See* A.D.I. 10 at 15-16. Simply put, Plaintiff is wrong. Those choice of law provisions are irrelevant to the instant dispute because "[i]t goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Accordingly, AML Global cannot be bound by a choice of law provision in an agreement it did not sign. *See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 676 F.Supp.3d 233, 256 (S.D.N.Y. 2023) (rejecting plaintiff's bid "to bind non-signatories" "to the agreements containing the choice-of-law provisions."); *see also HREF Senior Worthington LLC v. Conroe WM LLC*, 2025 WL 2807010, at * 3 n.36 (Del. Ch. Oct. 2, 2025) ("A fundamental principal of contract law provides that only parties to a contract are bound by that contract.").[3]

#### 2.  Delaware Law Applies Under New York's Interest Analysis.

Plaintiff argues in the alternative that New York's "interest analysis factors weigh in favor of applying New York law here." A.D.I. 10 at 17. That is also incorrect. The interest analysis mandates application of Delaware law. Plaintiff recites the interest analysis factors for conduct-regulating torts, such as the tortious interference claim pressed here. *See* A.D.I. 10 at 16-17 (listing "(a) the place where the injury occurred, (b) the place where the conduct causing the injury

---

[3] The cases Plaintiff relies upon do not hold otherwise. Those cases involved claims asserted by a party to the operative contract against a counterparty to that same contract. *See* A.D.I. 10 at 15 (citing *Pentacon BV v. Vanderhaegen*, 725 F.Supp.3d 350, 367 (S.D.N.Y. 2024) and *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1102 (N.Y. 2004)).

occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."). Plaintiff then inexplicably applies the "center of gravity" factors applicable in breach of contract actions. *See, e.g.*, *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 336 (2d Cir. 2005) ("In contract cases, New York courts apply the 'center of gravity' or 'grouping of contacts' choice of law theory. By contrast, the preferred analytical tool in tort cases is to apply 'interest analysis'"); *see also* A.D.I. 10 at 17 (listing the Intercreditor Agreement's alleged contacts with New York). Plaintiff's "misguided" attempt to "conflat[e] … the two tests is improper." *Zuckerman v. Metro. Museum of Art*, 307 F.Supp.3d 304, 324-25 (S.D.N.Y. 2018), *aff'd,* 928 F.3d 186 (2d Cir. 2019).

A proper application of New York's interest analysis requires courts to "apply the laws of the jurisdiction that has the greatest interest in, and is most intimately concerned with, the <u>outcome</u> of a given litigation." *Zuckerman*, 307 F.Supp.3d at 320-21 (underline in original). That jurisdiction in this case is clearly Delaware. First, Plaintiff's allegations against AML Global directly implicate the integrity of the entire bankruptcy and sale processes conducted in a Delaware court. *See, e.g.*, D.I. 1224, Citiking Objection ¶23 (Citiking arguing that AML Global's debt purchase from DWC Pine "raises questions concerning the integrity and transparency of the Sale process."). Delaware has the greatest interest in ensuring parties are not abusing its bankruptcy courts. Second, as Judge Caproni explained, "[a]s alleged in the State Complaint, the relevant events largely occurred in Delaware, where AML and Diligent purportedly conspired to deny Citiking its right to credit bid, and the bankruptcy proceedings remain ongoing." D.D.I. 60, Opinion and Order at 20. Thus, by Plaintiff's own account, the alleged conduct that caused Plaintiff's purported injury occurred in Delaware.

In any event, none of the alleged "facts"[4] that Plaintiff identifies in its faux interest analysis are pleaded in the Complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *In re F-Squared Inv. Mgmt., LLC*, 2019 WL 4261168, at *8 (Bankr. D. Del. Sept. 6, 2019), and "may not be considered by the Court in resolving the instant motion to dismiss." *Conaway v. McAfee-Garner*, 2020 WL 6445895, at *2 (D. Del. Nov. 3, 2020).

### B.    Plaintiff's Tortious Interference Claim Fails Under Delaware Law.

Plaintiff argues that "the Complaint alleges a plausible claim for tortious interference with contract" under Delaware law. A.D.I. 10 at 21. However, "[a] claim is facially plausible when the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Automated Precision, Inc. v. Pare*, 631 F.Supp.3d 185, 200 (D. Del. 2022). Indeed, Plaintiff admits that "the court must separate the factual and legal elements of the claim" and "disregard[] any legal conclusions." A.D.I. 10 at 14. Even so, Plaintiff relies on conclusory allegations and allegations that contradict the record in the Main Bankruptcy Case to argue that the Complaint plausibly alleges tortious interference. *Compare* A.D.I. 7 at 31-33 (identifying Complaint's conclusory and contradictory allegations)*, with* A.D.I. 10 at 21-24 (relying largely on the same deficient allegations for tortious interference argument). For this and other reasons, the Complaint fails to plausibly allege tortious interference.

The Complaint's allegations do not satisfy the knowledge element, which Plaintiff admits requires pleading sufficient ***facts*** to show that AML Global "had actual or imputed knowledge of the substance of the contract rights, even if it did not know about the exact terms." *Thomson Reuters*

---

[4] Plaintiff asserts without citation or support that "Citiking was headquartered in New York at the time of its [supposed] injuries resulting from AML's [allegedly] tortious conduct," that the Intercreditor Agreement was negotiated and intended to be carried out in New York, and that the alleged conspiracy occurred in New York. *See* A.D.I. 10 at 17-18.

*Enter. Ctr. GmbH v. Ross Intel. Inc.*, 694 F.Supp.3d 467, 489 (D. Del. 2023) (cited in A.D.I. 10 at

21-22). For this element, Plaintiff relies on a lone paragraph in the Complaint without any specific

facts to show AML Global's purported knowledge of Citiking's alleged right of first refusal under

the Intercreditor Agreement. *See* A.D.I. 10 at 22 (quoting Compl. ¶118). Plaintiff tries to

supplement the Complaint's deficient knowledge allegations by arguing "Diligent plausibly

alleges AML was aware of the right-of-first refusal provision" because "the Bankruptcy docket is

littered with references to the Intercreditor Agreement." A.D.I. 10 at 19. This argument falls flat

upon even a cursory review of the given citations (*id.* at 22),[5] each of which discuss **DWC Pine's**

**rights** under various DWC Pine-Citiking contracts and never describe Citiking's purported rights.

The Complaint fails to satisfy the intentional act element for similar reasons. Specifically,

Plaintiff argues that "the Complaint plausibly alleges that AML committed an intentional act which

was a significant factor in causing the breach of the Intercreditor Agreement." A.D.I. 10 at 23. But

fails to identify any particular "intentional act" committed by AML Global—relying instead on

---

[5] Plaintiff attempts to rely on the following docket entries from the Main Bankruptcy Case:

**D.I. 1005** (Response and Objection of DW Partners, LP to Objection by Citiking to Debtors' Emergency Motion for Entry of a Final Order) ¶16, defined and described the Continuing Obligations Agreement ("COA"), dated July 10, 2018, between Citiking and DWC Pine, stating that the COA "governed additional rights and remedies available to both parties in connection with the Debt Purchase Agreement," and specifically identifying **DWC Pine's right** to repurchase the loans from Citiking under certain circumstances. *Id.* (quoting COA § 6(b)).

**D.I. 1005** ¶27, quoted Citiking's attorney during the October 11, 2018 "First Day" hearing that certain language was included in a proposed interim DIP order because "DW wanted to be sure that nothing in this order would impact the rights, vis-à-vis, Citiking and DW, with respect to **DW's ability to enforce its remedies** under those agreements against Citiking." *Id.* (quoting Oct. 10, 2018 Hr'g Tr.) 43:12-44:6).

**D.I. 56** (Oct. 11, 2018 Hr'g Tr.) 43:15-22, which is included in the transcript portion quoted in D.I. 1005 ¶27 described immediately above relating to **DWC Pine's** remedies under a variety of agreements.

**D.I. 1060** (Nov. 17, 2020 Hr'g Tr.) 89:18-21, is a portion of the argument Citiking's counsel offered to this Court on contractual subordination, referring to a "continuing obligations agreement, which . . . says the subordination applies after the re-purchase by DW," *i.e.*, another reference to **DWC Pine's** repurchase rights. *Id.* 90.

**D.I. 208** (Nov. 27, 2018 Final DIP Order) ¶47, clarifies that the Final DIP Order was not intended to "impair in any way any claim, right, or remedy of **DWC Pine Investments I, Ltd.**, or any affiliate thereof (collectively, 'DW') under any of the 'Purchase and Sale Agreement,' the 'Continuing Obligations Agreement,' the 'Escrow Agreement,' or the 'Intercreditor Agreement' . . . or any other claim, right, or remedy that **DW** may have with respect to Citiking[.]" *Id.*

conclusory allegations such as, "AML and DW were colluding with one another to effectively freeze Citiking out of the bidding process by eliminating the opportunity to credit bid . . . ." *Id.* (quoting Compl. ¶112). This is insufficient to survive a motion to dismiss. *See, e.g.*, *BV Advisory Partners, LLC v. Quantum Computing Inc.*, 2024 WL 2723119, at \*16 (Del. Ch. May 28, 2024) (dismissing tortious interference claim because plaintiff failed to plead intentional act where it alleged "a conspiracy among all defendants" "but only in a conclusory way.").

As to the justification element, Plaintiff's only argument is that AML Global "acted with an improper motive in furtherance of improper interests." A.D.I. 10 at 23. But the seminal case on this issue, upon which Plaintiff relies (*id.*), holds that "[o]nly if the defendant's *sole* motive was to interfere with the contract will this factor support a finding of improper interference." *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (emphasis in original). Here, Plaintiff has alleged no facts (nor could it) to show that AML Global's objective in purchasing the secured debt held by DWC Pine was to procure DWC Pine's alleged breach of the Intercreditor Agreement. To the contrary, at best, the allegations in the Complaint suggest that AML Global purchased the debt "to allow AML to purchase the Debtors' assets at a theoretical 'face value' far below market value" (Compl. ¶82). The Complaint, therefore, fails to plead justification. *See WaveDivision*, 49 A.3d at 1174 (affirming dismissal of tortious interference claim where defendants "were motivated at least in part by a desire to protect their investment[.]").

Finally, Plaintiff asserts that "Diligent plausibly alleged it suffered damages from AML's tortious interference with the Intercreditor Agreement." A.D.I. 10 at 21. Not so. The damages that Plaintiff seeks here—"$7,500,000, the amount that Citiking [allegedly] paid for the purchase of the Second Tranche Loans," Compl. ¶113—relate to DWC Pine's alleged breach of the July 25, 2019 Letter Agreement by purportedly failing "to deliver and assign to Citiking the Second Tranche

Loans," *id.* ¶98. Plaintiff fails to identify any harm flowing from DWC Pine allegedly failing to offer Citiking a right of first refusal to purchase (for a third time) the Second Tranche Loans.

### C.    Plaintiff's Conspiracy Claim Fails Under Delaware Law.

Plaintiff does not dispute that its civil conspiracy claim depends on the existence of a predicate tort to survive. *See generally* A.D.I. 10 at 25-27. Thus, the parties agree that, if Plaintiff cannot prevail on its tortious interference claim (it cannot, *see* §§ II.B, II.D), the civil conspiracy also fails. Plaintiff's civil conspiracy argument fails for three additional reasons.

***First***, Plaintiff's attempt to minimize *American Capital Acquisition Partners, LLC v. LPL Holdings, Inc.*, 2014 WL 354496 (Del. Ch. Feb. 3, 2014) and *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1 (Del. Ch. 2009)—both of which hold that tortious interference cannot serve as the basis for a civil conspiracy claim—is unavailing. Contrary to Plaintiff's position, the *NACCO* court ***dismissed*** the civil conspiracy count against the allegedly interfering third party. *See NACCO*, 997 A.2d at 36. Moreover, Plaintiff fails to address further Delaware cases that also explicitly provide that "a tortious interference with a contract claim cannot form the basis for civil conspiracy." *Lamplugh v. PBF Energy*, 2020 WL 434204, at *4 (D. Del. Jan. 28, 2020); *see KT4 Partners LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *31 (Del. Super. Ct. June 24, 2021) ("A civil conspiracy claim also fails if the underlying wrongful act alleged is a breach of contract, or tortious interference with an existing contract."). The outdated *dicta* from *UbiquiTel Inc. v. Sprint Corp.*, 2005 WL 3533697, at *5 (Del. Ch. Dec. 14, 2005) (cited in A.D.I. 10 at 26-27), a case governed by "the substantive law of Pennsylvania" and decided prior to *NACCO*, *American Capital*, *Lamplugh*, and *KT4 Partners*, cannot salvage Plaintiff's conspiracy claim.

***Second***, Plaintiff's argument on civil conspiracy's confederation element misses the point. *See* A.D.I. 10 at 27. A viable civil conspiracy claim requires at least ***two*** conspirators working

together to accomplish an unlawful act. Because "[a] party to a contract cannot interfere or conspire to interfere with its own contract," *Tolliver v. Trinity Par. Found.*, 2017 WL 3288119, at *17 (D. Del. Aug. 2, 2017), the Complaint's allegation that DWC Pine conspired with AML Global to tortiously interfere with the Intercreditor Agreement fails as a matter of law to plead a valid civil conspiracy claim. *See, e.g.*, *Watkins v. Int'l Union, Sec., Police & Fire Pros. of Am.*, 2016 WL 1166323, at *6 (D. Del. Mar. 23, 2016) (alleged conspiracy inactionable because party to a contract "cannot interfere or conspire to interfere with its own contract."); *see also Clouser v. Doherty*, 2017 WL 3947404, at *9 (Del. Sept. 7, 2017) ("In the absence of an actionable wrong, a civil conspiracy claim will fail").

**Third**, the Opposition states that "Diligent has also plausibly alleged that an unlawful act was done in furtherance of the conspiracy . . . as set forth above in discussing civil conspiracy under New York law." A.D.I. 10 at 27. But, in fact, Plaintiff did not claim in its New York law argument that AML Global committed an unlawful act. Instead, Plaintiff alleged only that "AML committed an **overt** act," *id.* at 25, and failed to specify what overt act AML Global purportedly took. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327-28 (3d Cir. 2022) (courts should disregard "allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and the factual"). Plaintiff, thus, failed to plausibly allege this element.

### D.    Plaintiff's Tortious Interference Claim Fails Under New York Law.

New York substantive law does not apply to Plaintiff's claims. But, even assuming that it did, Plaintiff's assertion that "Diligent's Complaint satisfies each of the four elements" of tortious interference is incorrect. *See* A.D.I. 10 at 18. In fact, the Complaint fails to plausibly allege the knowledge, intent, causation, and damages elements of a tortious interference claim.

11

First, contrary to Plaintiff's claim that "[k]nowledge of the contract's existence suffices" (A.D.I. 10 at 18),[6] "Plaintiff must show that [AML Global] had ***actual knowledge*** of the terms of the contract and of the contractual obligation that was allegedly breached[.]" *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F.Supp.3d 204, 212 (W.D.N.Y. 2021); *see Medtech Prods. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 797 (S.D.N.Y. 2008) (dismissing tortious interference claim where plaintiff failed to allege defendant "saw the governing contracts and therefore was aware of the limitations they imposed"). Instead, the Complaint offers nothing more than the bare allegation that AML Global "was fully aware of the obligations and rights retained by DW and Citiking with respect to the Second Tranche Loans and the ROFR associated with the Loans in their entirety." Compl. ¶62; *see also id.* ¶¶110, 118. Indeed, the Complaint pleads ***zero*** facts to substantiate or support this conclusory claim. *See RSM Prod. Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) ("The law requires some factual specificity in pleading tortious interference."), *aff'd,* 387 F.App'x 72 (2d Cir. 2010). As explained *supra* § II.B, ***none*** of the Main Bankruptcy Case docket entries upon which Plaintiff relies (*see* A.D.I. 10 at 19, 22) provide any support for the allegation that AML Global had actual knowledge of Citiking's purported rights under the Intercreditor Agreement. *See Taboola, Inc. v. Ezoic Inc.*, 2020 WL 1900496, at *12 (S.D.N.Y. Apr. 17, 2020) (dismissing tortious interference claim because "constructive knowledge . . . is insufficient").

Second, "[t]o satisfy the intentional procurement element, 'it is not enough that a defendant

---

[6] Plaintiff purports to support this argument with *Gold Medal Farms, Inc. v. Rutland County Co-op. Creamery, Inc.*, 9 A.D. 2d 473, 479 (3d Dep't 1959) (cited at A.D.I. 10 at 18), but that 65-year-old, intermediate appellate state court case stands instead for the proposition that a plaintiff need not prove the defendant had "***full knowledge*** of the detailed terms of the existing contract[.]" *Id.* at 478. *Gold Medal* does, however, require the plaintiff to prove that the defendant had sufficient knowledge such that it could have "intentionally made an offer of better terms" to the allegedly-breaching party. *Id.* at 479.

engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's *objective* was to procure such a breach.'" *Titan Cap. ID, LLC v. Axos Bank*, 2025 WL 2771873, at *7 (S.D.N.Y. Sept. 29, 2025) (emphasis in original); *see Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F.Supp.3d 328, 399 (S.D.N.Y. 2023) (similar). The Complaint does not satisfy this standard because, as explained *supra*, § II.B, at best the allegations suggest that AML Global purchased DWC Pine's secured debt to "allow AML to purchase the Debtors' assets at a theoretical 'face value' far below market value" (Compl. ¶82). "This allegation is insufficient[.]" *Gan v. GSUIG Real Est. Member LLC*, 2025 WL 2416950, at *24 (E.D.N.Y. Aug. 21, 2025) (dismissing tortious interference claim for lack of intent where plaintiff alleged defendant intended to cause a lender's subordination in order to generate profits and fees under the senior loan).

Plaintiff seeks to sidestep this fatal flaw by arguing that "persuasion to breach" alone is sufficient to show intent. *See* A.D.I. 10 at 19 (citing *Acrisure, LLC v. Woodruff-Sawyer & Co.*, 84 Misc. 3d 1262(A), 2024 Slip. Op. 51796(U) at *4 (Sup. Ct. N.Y. Cnty. Dec. 30, 2024)). But this argument fails because the Complaint lacks any facts that show AML Global did anything to persuade DWC Pine to sell its interest in Debtors' debt to AML Global. *See Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE*, 2025 WL 1827274, at *5 (S.D.N.Y. July 2, 2025) (dismissing tortious interference claim as "too conclusory and speculative" "because there were no factual allegations that the third party directed, commanded, or set in motion" the alleged breach).

Third, where, as here, "a defendant can demonstrate that the third-party was predisposed toward breaching the contract even in the absence of the alleged interference, a plaintiff cannot establish 'but for' causation." *RSM*, 643 F.Supp.2d at 410. Even assuming that DWC Pine was obligated under the Intercreditor Agreement to provide Citiking a right of first refusal and failed

to do so, the course of dealing detailed in the Complaint shows that any such breach was the result

of DWC Pine's predisposition to no longer deal with Citiking. *See e.g.*, Compl. ¶¶33, 34 (alleging

that DWC Pine issued five default notices to Citiking over six month period); *id.* ¶43 (alleging that

DWC Pine declined to deliver certain loans to Citiking when due).[7] DWC Pine's statements in the

Main Bankruptcy Case further demonstrate this predisposition. *See, e.g.*, D.I. 1060 at 97:1-4

("Citiking has fallen down many, many times . . . in connection with paying off and purchasing

the debt from DW"); D.I. 1005 ¶50 (Citiking "has acted in bad faith since entry of the CK Final

DIP Order (if not also before such entry)"). As such, Plaintiff cannot establish AML Global was

"the proximate and direct cause" (Compl. ¶111) of DWC Pine's alleged breach. *See Prysm*, 2025

WL 1827274, at *6 (rejecting claim that defendant was "but for" cause of non-party terminating

contract because, even before defendant's involvement, non-party "was determined to avoid its

contractual obligations to pay [plaintiff]"); *see also RSM*, 643 F.Supp.2d at 410 (explaining that

"conclusory allegations of proximate cause need not be accepted as true for purposes of ruling on

a motion to dismiss") (quoting *In re Am. Express Co. S'holder Lit.*, 39 F.3d 395, 400 n. 3 (2d Cir.

1994)).

Finally, Plaintiff's damages request—"$7,500,000, the amount that Citiking paid for the

purchase of the Second Tranche Loans" (Compl. ¶113)—does not correspond to any permissible

category of damages available for tortious interference: "(a) the pecuniary loss of the benefits of

the contract or the prospective relation; (b) consequential losses for which the interference is a

legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be

---

[7] Indeed, perhaps the strongest evidence that DWC Pine was "predisposed toward breaching the contract" is that, according to Plaintiff's allegations, DWC Pine *was already in breach* of other agreements with Citiking as of July 2019 when it purportedly failed to deliver the at-issue loans to Citiking. *See* Compl. ¶43; *see also id.* ¶¶96-107.

expected to result from the interference." *Better Holdco*, 666 F.Supp.3d at 401. Plaintiff alleges

none of these consequences. Because "damages are a required element of tortious interference,"

*Id.* at 402, this failing alone is sufficient grounds to grant dismissal.

### E.    Plaintiff's Conspiracy Claim Fails Under New York Law.

"New York does not recognize an independent tort of conspiracy." *Kirch v. Liberty Media*

*Corp.*, 449 F.3d 388, 401 (2d Cir. 2006). Thus, because Diligent failed to plausibly plead a cause

of action for tortious interference with contract, "it necessarily fails to state an actionable claim for

civil conspiracy." *N. Shipping Funds I, L.L.C. v. Icon Cap. Corp.*, 2013 WL 1500333, at *6

(S.D.N.Y. Apr. 12, 2013); *see Kirch*, 449 F.3d at 401 (same).

The conspiracy claim fails for at least three additional reasons. First, Plaintiff argues that

"[t]he Complaint plausibly alleges the[] elements" of civil conspiracy (A.D.I. 10 at 25), but

supports this assertion with legally insufficient "conclusory, vague, [and] general allegations that

the defendants have engaged in a conspiracy." *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,

770 F.Supp.2d 627, 659 (S.D.N.Y. 2011). Second, and relatedly, to survive a motion to dismiss,

the complaint must, but does not, "allege the specific times, facts, and circumstances of the alleged

conspiracy." *Medtech*, 596 F.Supp.2d at 795. Third, "where a plaintiff's conspiracy claim offers

no new allegations beyond those alleged in support of other tort claims, the conspiracy claim must

be dismissed as duplicative." *Pentacon*, 725 F.Supp.3d at 388. Dismissal is appropriate here

because the Complaint's conspiracy allegations entirely overlap with, and add nothing to, the

tortious interference allegations.

### **CONCLUSION**

For these reasons, AML Global requests that the Court grant the relief sought in the Motion.

15

Dated:    November 24, 2025

PACHULSKI STANG ZIEHL & JONES LLP
By: */s/ Mary F. Caloway*
Laura Davis Jones (DE Bar No. 2436)
Mary F. Caloway (DE Bar No. 3059)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
     mcaloway@pszjlaw.com

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
Michael C. Keats (*pro hac vice*)
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: michael.keats@friedfrank.com

*Counsel for Defendant*
*AML Global Eclipse, LLC*

69548265