# EXHIBIT A

Case 25-22065-JKS Doc 20-1 Filed 04/27/26 Page 2 of 18

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 3/3/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DILIGENT ENTERPRISE MANAGEMENT, LLC,

Plaintiff,

-against-

AML GLOBAL ECLIPSE, LLC, DWC PINE INVESTMENTS I, LTD., ALAN KLAPMEIER, JAMES CARROLL, STEVE SERFLING, RJ SIEGLE, and MIKE WYSE,

Defendants.

24-CV-2228 (VEC) (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is the application of defendant AML Global Eclipse, LLC (AML) for an award of $163,107 in attorneys' fees and $1,542.54 in expenses, pursuant to Fed. R. Civ. P. 41(d), to be paid by plaintiff Diligent Enterprise Management, LLC (Diligent) as a sanction for voluntarily dismissing *Diligent Enterprise Management, LLC v. AML Global Eclipse, LLC et al.*, No. 1:23-CV-10924 (VEC) (*Diligent I*), and then filing this lawsuit (*Diligent II*) "the same day against many of the same defendants asserting the same claims." *Diligent Enter. Mgmt., LLC v. AML Glob. Eclipse, LLC*, 2025 WL 1502032, at *10 (S.D.N.Y. May 27, 2025). For the reasons that follow, AML will be awarded **$80,525** in attorneys' fees and **$1,542.54** in expenses.

## I. BACKGROUND

I assume familiarity with the factual background and procedural history of this case, which are described in detail in *Diligent*, 2025 WL 1502032, at *1-4, and are reviewed here only to the extent necessary to resolve the pending fee application.

### A. Factual Background

Diligent's claims in this Court relate chiefly to a series of agreements, including an Intercreditor Agreement, between defendant DWC Pine Investments I, Ltd. (DWC) and Citiking

International US LLC (Citiking), concerning their rights with regard to certain nonperforming loans issued by affiliates of ONE Aviation Corp. (ONE Aviation). *See Diligent*, 2025 WL 1502032, at *1. On October 9, 2018, ONE Aviation and its affiliates (the Debtors) filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware (the Bankruptcy Court). *Id.* at *2. Two years later, on November 20, 2020 – after a failed Plan of Reorganization and several aborted sale efforts – the Bankruptcy Court approved the sale of the Debtors' assets to AML, which also agreed to buy the Debtors' secured debt, including a second tranche of nonperforming loans, from DWC. *Id.* at *3. Citiking appealed the approval order and unsuccessfully sought a stay pending appeal. The bankruptcy proceeding was then "converted from Chapter 11 to Chapter 7." *Id.* In the Bankruptcy Court, Citiking objected to the allowance of any claim asserted by AML, arguing – among other things – that DWC and AML had conspired to deprive Citiking of its right to credit bid the amounts that the Debtors owed it, and that the sale of the secured debt to AML violated Citiking's right of first refusal pursuant to the Intercreditor Agreement between DWC and Citiking. *Id.* On June 23, 2023, Citiking withdrew its objection in exchange for $950,000. *Id.*

**B. Procedural History**

On July 20, 2023, Diligent, as assignee of Citiking, filed *Diligent I* in New York State Supreme Court. In its complaint, Diligent asserted claims against AML, DWC, and six former directors and officers of ONE Aviation,[1] for breach of contract, tortious interference, civil conspiracy, and breach of fiduciary duty, all premised on defendants' "wrongful and deceptive conduct with respect to the bankruptcy and asset sale and purchase of One Aviation." *Diligent I*

[1] The individual defendants sued in *Diligent I* were Alan Klapmeier, James Carroll, Steve Serfling, RJ Siegle, Mike Wyse, and Carol Larotonda.

Compl. (Dkt. 1-1 to Dkt. 1-4 in *Diligent I*) at 2; *see also id.* ¶¶ 1-9, 90-146. On December 15, 2023, defendants removed the case to this Court. (Dkt. 1 in *Diligent I*.)

On January 19, 2024, the Hon. Valerie E. Caproni, United States District Judge, gave the parties a briefing schedule for (a) Diligent's planned motion to remand the case to state court, and (b) defendants' planned cross-motion to transfer the case to the District of Delaware, where the ONE Aviation bankruptcy proceeding was venued. (Dkt. 13 in *Diligent I*.) In the same order, the district judge extended defendants' time to answer or move against the complaint until "twenty days after the Court resolves the parties' jurisdictional and venue-related issues." *Id*. In February and March 2024, the parties filed their moving and opposition briefs as to those motions. Additionally, during that period, the parties stipulated to dismiss all of plaintiff's claims against Larotonda. (Dkt. 20 in *Diligent I*.) Then, on March 12, 2024 – before the reply briefs were filed as to the remand and transfer motions – Diligent voluntarily dismissed its claims against AML and the remaining individual defendants, without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (Dkt. 25 in *Diligent I*.) On March 15, 2024, Diligent voluntarily dismissed its claims against DWC as well. (Dkt. 26 in *Diligent I*.)

That same day, Diligent filed a "substantively identical" complaint in New York State Supreme Court, *Diligent*, 2025 WL 1502032, at *4, naming all of the same defendants (except for Larotonda) and asserting the same causes of action. *See Diligent II* Compl. (Dkts. 1-1 and 1-2) ¶¶ 1-8, 89-152. On March 19, 2024, AML asked Judge Caproni to address the "impermissible chicanery that Plaintiff [Diligent] is engaging in to evade this Court's jurisdiction over the pending motion to remand and cross-motion to transfer." (Dkt. 27 in *Diligent I*, at 1.) AML suggested that this Court issue "an injunction against the state court action to preserve its own federal

jurisdiction." *Id*. at 2. Judge Caproni held a conference on March 22, 2024 (*see* Dkt. 28 in *Diligent I*), but did not issue an injunction.

On March 25, 2024, defendants removed *Diligent II* to this Court (Dkt. 1), where it was assigned to Judge Caproni. On April 24, 2024, Diligent notified the Court that "it [was] unable to proceed with this lawsuit at this time," and requested leave to dismiss *Diligent II* without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). (Dkt. 11.)[2] On June 4, 2024, after briefing, Judge Caproni denied Diligent's request and gave it a deadline of June 14, 2024, to "either (a) file a notice of voluntary dismissal with prejudice, or (b) file a letter proposing a jointly-agreed upon briefing schedule to address the threshold service, jurisdiction, and venue issues." (Dkt. 17 at 4.)

Plaintiff failed to comply with that order. Instead, on June 14, 2024, Diligent's counsel filed a motion to withdraw, citing "irreconcilable differences," as well as Diligent's failure to pay its legal bills. (Dkt. 19.) Judge Caproni granted the withdrawal motion on June 24, 2024. (Dkt. 23.)

On September 6, 2024, after new counsel appeared for Diligent (Dkt. 26), it moved to remand *Diligent II* to state court. (Dkt. 44.) On September 17, 2024, defendants cross-moved to transfer *Diligent II* to the District of Delaware. (Dkt. 47.) That same day, AML, joined by defendants Klapmeier, Carroll, Serfling, Siegle, and Wyse (the Individual Defendants) filed a motion for sanctions and costs pursuant to Fed. R. Civ. P. 11 and 41(d). (Dkt. 50.) On May 27, 2025, after the motions were fully briefed, Judge Caproni denied the remand motion; granted the

[2] Under Rule 41(a)(1)(A)(i), plaintiff may dismiss its case voluntarily, by notice, if it does so before the opposing party serves either an answer or a motion for summary judgment. "Unless the notice . . . states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). Thus, in order to dismiss a case based on the same claim for a second time *without* prejudice, the plaintiff must obtain "a stipulation of dismissal signed by all parties who have appeared," Fed. R. Civ. P. 41(a)(1)(A)(ii), or a court order. Fed. R. Civ. P. 41(a)(2).

transfer motion; denied the motion for Rule 11 sanctions; but granted the motion of AML and the Individual Defendants for Rule 41(d) sanctions, because "[t]he exact scenario contemplated by the plain text of the rule occurred here," *Diligent*, 2025 WL 1502032, at *10, and "Diligent's conduct in dismissing and re-filing its lawsuit was 'perplexing' and 'unduly vexatious.'" *Id.* at *11.

On May 27, 2025, *Diligent II* was transferred to the District of Delaware. However, this Court retained jurisdiction for the purpose of enforcing the Rule 41(d) award, *Diligent*, 2025 WL 1502032, at *11, in accordance with well-settled precedent. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.").

With respect to the Rule 41(d) sanction, Judge Caproni directed the parties to meet and confer in a good faith attempt to resolve the amount due. *Diligent*, 2025 WL 1502032, at *11. They were unable to do so. Consequently, on July 2, 2025, Judge Caproni referred the fee dispute to me, as a non-dispositive matter, for decision. (Dkt. 64.) On August 6, 2025, I directed AML and the Individual Defendants to submit their application for fees and expenses no later than August 29, 2025 (Dkt. 77), which they did, filing a joint notice of motion (Mot.) (Dkt. 78), a memorandum of law (Dkt. 79), and the declarations of AML's attorney Michael C. Keats (Keats Decl.) (Dkt. 80) and the Individual Defendants' attorney Erica Barrow (Barrow Decl.) (Dkt. 81), with exhibits. AML requested $163,107 in attorneys' fees and $1,542.54 in expenses. Mot. at 1. The Individual Defendants requested $46,077.50 in attorneys' fees. *Id.*

On September 12, 2025, Diligent filed its memorandum in opposition to the fee motion (Pl. Opp.) (Dkt. 85), with exhibits. On September 29, 2025, AML filed a reply brief in further support of its fee application (Def. Reply) (Dkt. 89), supported by another declaration from attorney Keats

(Keats Supp. Decl.) (Dkt. 90), with exhibits. That same day, the Individual Defendants withdrew their request for a fee award. (Dkt. 88.)

## II. STANDARDS

Rule 41(d) provides that if "a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant," the court may – as relevant here – "order the plaintiff to pay all or part of the costs of that previous action[.]" Fed. R. Civ. P. 41(d). It is well-settled, in our Circuit, that "costs," for purposes of Rule 41(d), include reasonable attorneys' fees. *Horowitz v. 148 S. Emerson Assocs. LLC*, 888 F.3d 13, 24-25 (2d Cir. 2018). However, "[r]easonable costs under Rule 41(d) are not necessarily the actual costs of the defendant in the defense of the first action." *Zucker v. Katz*, 1990 WL 20171, at *1 (S.D.N.Y. Feb. 21, 1990). Rather, a defendant awarded costs under Rule 41(d) is entitled to reimbursement of the fees and expenses that were reasonably "incurred in defense of the first suit" and that "cannot be used in an ongoing or subsequent litigation." *Id.*; *accord Preferred Freezer Servs., LLC v. Americold Realty Tr.*, 2020 WL 774132, at *3 (S.D.N.Y. Feb. 18, 2020); *Pelczar v. Pelczar*, 2017 WL 3105855, at *2 (E.D.N.Y. July 20, 2017).

In determining whether attorneys' fees are "reasonable" for purposes of an award under Rule 41(d), courts in our Circuit use the "lodestar formula," under which "a reasonable number of hours required by the case at a reasonable hourly rate creates a 'presumptively reasonable fee.'" *Rivera v. ABM Indus., Inc.*, 2023 WL 6850327, at *4 (E.D.N.Y. Sept. 29, 2023) (quoting *Kizer v. Abercrombie & Fitch Co.*, 2017 WL 9512408, at *2 (E.D.N.Y. July 24, 2017)), *adopted,* 2023 WL 6845866 (E.D.N.Y. Oct. 17, 2023); *accord MSP Recovery Claims, Series LLC v. Hartford Fin. Servs. Grp., Inc.*, 2021 WL 5563982, at *3 (D. Conn. Nov. 29, 2021). The party seeking to recover attorneys' fees bears the burden of establishing both the reasonableness of the hours spent and the

reasonableness of the rates charged. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48, 1151-52 (2d Cir. 1983).

## III. ANALYSIS

### A. Reasonable Hourly Rates

To determine a reasonable hourly rate, the district court must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees," *Arbor Hill Concerned Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), including the *Johnson* factors, which are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186-87 & n.3 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). Ultimately, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 190; *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.") (internal quotations and citation omitted). "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award," *Casmento v. Volmar Constr., Inc.*, 2022 WL 17666390, at *3 (S.D.N.Y. Dec. 14, 2022), as I have done here.

Ultimately, the rates accepted by the district court must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation." *Blum*, 465 U.S. at 895 n.11. In making this determination, "district courts exercise 'considerable discretion.'" *J.A. v. N.Y.C. Dep't of Educ.*, 2026 WL 305167, at *4 (S.D.N.Y. Feb. 5, 2026) (Caproni. J.) (quoting *Arbor Hill*, 522 F.3d at 190).

AML seeks fees for the time of three partners, one special counsel, three associates and a managing clerk, all employed by Fried, Frank, Harris, Shriver & Jacobson LLP (Fried Frank), a prominent global law firm headquartered in New York. AML requests hourly rates of $2,250 for work performed in 2024 by the late James D. Wareham, a partner at Fried Frank with over 35 years of experience; $1,675 and $1,950 for work performed (in 2023 and 2024, respectively) by Michael Keats, a partner with more than 25 years of experience; $1,850 and $2,020 for work performed (in 2023 and 2024, respectively) by Peter Siroka, a partner with 18 years of experience (as of 2024); $1,415 for work performed John A. Borek, a managing attorney and special counsel with over 40 years of experience; $1,235 for work performed by Ryan A. Berger, an associate with six years of experience (as of 2023, when all of his work was performed); $1,180 and $1,275 for work performed (in 2023 and 2024, respectively) by Elizabeth Kalanchoe, an associate with six years of experience (as of 2024); $805 for work performed by David Keyes, a junior associate with one year of experience (as of 2024, when all of his work was performed); and $535 and $580 for work performed by Edward Strecker, a managing clerk with at least fourteen years of experience. Keats Decl. ¶¶ 20-27 & Exs. 1-4 (Dkts. 80-1 to 80-4).

In support of its request for partner rates exceeding $2,000 per hour, associate rates exceeding $1,200 per hour, and non-lawyer rates exceeding $500 per hour, AML relies on *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559 (S.D.N.Y. 2025), a breach of contract action

arising out of a commercial real estate transaction, in which Judge Ho accepted hourly rates ranging from $2,035 (for a Gibson Dunn partner with more than 30 years' experience) to $805 (for a junior associate at the same firm) when assessing discovery sanctions. In that case, however, the opposing party did not "take any issue with the reasonableness of Gibson Dunn's hourly rates," thereby "essentially conced[ing] the reasonableness of the rates[.]" *Id.* at 588, 590. AML also points to an unpublished bankruptcy court order approving a total of over $64 million in interim fees to multiple law firms (and other professionals) for their services rendered in the bankruptcy of a major Brazilian airline. *See* Order Granting Fee Applications, *In re: Gol Linhas Aéreas Inteligentas, S.A., et al.*, No. 24-10118 (Bankr. S.D.N.Y. Aug. 22, 2024) (*Gol Linhas*), ECF No. 898. As AML notes, some of the law firms' underlying applications reflected hourly rates above $2,000.[3] Once again, however, it does not appear that any objections were lodged to those rates.[4]

In this case, by contrast, plaintiff vigorously contests the reasonableness of the requested rates, arguing that they are "excessively high." Pl. Opp. at 3. Plaintiff relies on *Greyhawk Hawthorne Lender, LLC v. Vella*, 2025 WL 2172228 (S.D.N.Y. July 31, 2025), in which Judge Liman reduced the requested hourly rate of a commercial litigation partner at Kelley Drye & Warren with 20 years of experience from $1,095 to $800, and reduced the hourly rates of the firm's

---

[3] The law firm representing the Official Committee of Unsecured Creditors, which sought $5,036,382.00 and was awarded $4,991,803.50 in interim fees for the four-month period covered by the cited order, billed at rates ranging up to $2,250 per hour. *See* First Interim Application of Wilkie, Farr & Gallagher LLP, Ex. C at ECF pp. 26-27, *Gol Linhas*, No. 24-10118 (July 15, 2024), ECF No. 797. It is not clear whether the $44,578.50 voluntary reduction to which the firm agreed, *see* Order Granting Fee Applications at ECF p. 5 n.8, was related to its hourly rates.

[4] In its reply papers, AML again argues that its fees are "more appropriately bookmarked" to the fees charged by large, full-service firms in New York, Def. Reply at 5-6, and submits two additional interim fee applications (by Cravath and Davis Polk, respectively), submitted in large-scale bankruptcies and – insofar as the record before this Court reveals – unopposed. *See* Keats Supp. Decl. ¶¶ 2-3 & Exs. A-B.

counsel and associates commensurately. *Id.* at *2-3 (collecting cases holding "that a reasonable rate for partners in this District is between $500 and $700 per hour").

Plaintiff further argues that the work that Fried Frank performed in *Diligent I* was "common and uncomplex." Pl. Opp. at 4. This characterization is somewhat uncharitable, as both the remand motion and the transfer motion turned on whether plaintiff's claims in this Court "arose under" title 11 of the Bankruptcy Code and thus were "core" bankruptcy proceedings. *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 1412; *Diligent*, 2025 WL 1502032, at *4-9. That was a sophisticated question that required analysis from lawyers with experience in bankruptcy law as well as general commercial litigation. It did not, however, require the attention of three Fried Frank partners billing at an average rate of over $2,000 per hour (in 2024). The fee award in *Greyhawk Hawthorne Lender* – which the court capped at $800 per hour for the most senior member of the successful legal team – was for almost exactly the same work: briefing and arguing "a motion to remand in a specialized area of law," together with a cross-motion "to transfer, which involved interrelated issues concerning the connection of this case to the bankruptcy proceeding." 2025 WL 2172228, at *1. Fried Frank's rates also look high in comparison to the rates charged by the Individual Defendants' attorneys at Baker Hostetler LLP (BakerHostetler), who worked side by side with Fried Frank on the same motions in *Diligent I*, but charged a maximum of $1,250 per hour (for work performed by Daniel Buzzetta, a commercial litigation partner with 30 years of experience). *See* Barrow Decl. ¶ 9 ("The ambit of legal services provided to the Individual Defendants [by BakerHostetler] mirrors those services provided by Fried Frank, counsel for AML Global"); *id.* ¶ 11 (describing Buzzetta's experience and rate charged to the Individual Defendants).

AML is correct that its willingness to pay Fried Frank at its stated hourly rates, *see* Keats Decl. ¶¶ 5-8, weighs in favor of the reasonableness of those rates. *See*, *e.g.*, *An v. Despins*, 2024

WL 1157281, at *2, 4 (S.D.N.Y. Mar. 18, 2024) (approving "discounted" hourly rates of up to $1,760 for "the co-Head of Davis Polk's White Collar Defense & Investigations practice," in part because defendants actually paid those rates), *appeal dismissed,* 2024 WL 4524742 (2d Cir. Aug. 13, 2024). However, it is only one of many factors, and the court also "has some responsibility to 'disciplin[e] the market,'" if necessary, *Danaher Corp. v. Travelers Indem. Co.*, 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) (alteration in original) (quoting *Arbor Hill*, 522 F.3d at 184), by "stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 184; *see also Hemant Patel, M.D., P.C. v. Bandikatla*, 2024 WL 1509238, at *12 (S.D.N.Y. Apr. 5, 2024) ("In the absence of adequate substantiation for why the Court should award higher rates to Scarinci & Hollenbeck than Anderson & Shah, the Court will use the hourly rates charged by Anderson & Shah for the work done by Scarinci & Hollenbeck."), *aff'd,* 2025 WL 3264679 (2d Cir. Nov. 24, 2025); *Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, 2022 WL 558182, at *10 n.21 (S.D.N.Y. Feb. 23, 2022) (Caproni, J.) (authorizing the Diocese to seek fees on a future motion but warning that the court "is very unlikely to approve the astronomically high rates . . . that the Diocese paid Jones Day for defending the underlying sexual abuse lawsuits," which included up to $1,100 per hour for partners, up to $675 per hour for associates, and $325 per hour for legal support).

After considering all of the relevant "case-specific variables," *Arbor Hill*, 522 F.3d at 190, including the *Johnson* factors, I conclude that the hourly rates sought by AML are above the current local market price "for similar services by lawyers of reasonably comparable skill, expertise and reputation," *Blum*, 465 U.S. at 895 n.11, and consequently are more than "a reasonable, paying client would be willing to pay" if that client wished to "spend the minimum

necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174. I will therefore reduce the hourly rates for the Fried Frank lawyers who worked on *Diligent I* by approximately one-third, to bring them closer to (albeit still somewhat higher than) the rates charged by BakerHostetler for similar work in the same case. The rate for the Fried Frank managing clerk – for whom no background information is provided beyond his tenure at the firm – will be reduced to $250 per hour. *See David Benrimon Fine Art LLC v. Son*, 2025 WL 3162079, at *8 (S.D.N.Y. Aug. 8, 2025) (reducing rates of all managing clerks and paralegals to $200 per hour where no biographical information was provided), *adopted,* 2025 WL 3001839 (S.D.N.Y. Oct. 27, 2025); *1979 Fam. Tr. Licensor, LLC v. Darji*, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020) (Caproni, J.) ("Courts in this district typically approve paralegal hourly rates between $150 and $200.") (collecting cases). The resulting rates are as follows:

| Name | Title | Requested Hourly Rate | Reasonable Hourly Rate |
|---|---|---|---|
| Wareham | Partner | $ 2,250 | $ 1,500 |
| Keats (2023) | Partner | 1,675 | 1,125 |
| Keats (2024) | | 1,950 | 1,300 |
| Siroka (2023) | Partner | 1,805 | 1,225 |
| Siroka (2024) | | 2,020 | 1,350 |
| Borek | Special Counsel | 1,415 | 950 |
| Berger | Associate | 1,235 | 825 |
| Kalanchoe (2023) | Associate | 1,180 | 800 |
| Kalanchoe (2024) | | 1,275 | 850 |
| Keyes | Associate | 805 | 525 |
| Strecker (2023) | Managing Clerk | 535 | 250 |
| Strecker (2024) | | 580 | 250 |

**B. Reasonable Hours Expended**

At the second stage of the analysis, the court multiplies each timekeeper's reasonable hourly rate by the reasonable number of hours expended. *Karsch v. Blink Health Ltd.*, 2019 WL 6998563, at *4 (S.D.N.Y. Dec. 20, 2019). "Time that was not spent on compensable tasks must of course be excluded from the calculation." *Charlestown Cap. Advisors, LLC v. Acero Junction,*

*Inc.*, 2021 WL 1549916, at *5 (S.D.N.Y. Apr. 20, 2021). Hours that are "excessive, redundant, or otherwise unnecessary" may also be excluded from a fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). In such a case, the district court "may exercise its discretion and use a percentage deduction 'as a practical means of trimming fat from a fee application.'" *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir.1998)); *see also Hines v. City of Albany*, 613 F. App'x 52, 54-55 (2d Cir. 2015) (summary order) (When "dealing with items that are 'excessive, redundant, or otherwise unnecessary, . . . the [district] court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application.'") (alterations in original) (quoting *Kirsch*, 148 F.3d at 173).

In this case, AML has submitted time records divided across four monthly invoices, *see* Keats Decl. Exs. 1-4, reflecting a total of 124.9 hours billed to tasks that AML contends to be compensable, including a total of 116.8 attorney hours and 8.1 paralegal hours.[5] As a threshold matter, plaintiff argues that some of the requested hours cannot be reimbursed under Rule 41(d) because "they [were] incurred after *Diligent 1*." Pl. Opp. at 1-2. Specifically, plaintiff argues that any fees incurred after Diligent voluntarily dismissed the last *Diligent I* defendant on March 15, 2024, are unrecoverable, including fees incurred in connection with the March 22, 2024 conference before Judge Caproni. *Id*. at 1 & Ex. A (Dkt. 85-1).

[5] Keats states that Fried Frank billed a total of 125.9 compensable hours in *Diligent I*. Keats Decl. ¶ 29. However, the underlying time records reflect that attorney Siroka billed 4 compensable hours in 2023, *see id.* Ex. 1 at ECF pp. 5-8, not 5 hours, as stated in the declaration. *See id*. ¶ 29. The correct total is therefore 124.9 hours.

Plaintiff is correct that, under Rule 41(d), AML is only entitled to recover fees "expended in defending the first suit." *Blauinsel Stiftung v. Sumitomo Corp.*, 2001 WL 1602118, at *9 (S.D.N.Y. Dec. 14, 2001). However, the March 22, 2024 conference was scheduled and conducted as part of "the first suit" (notwithstanding plaintiff's voluntary dismissal of its claims). Accordingly, I will permit AML to recover its attorneys' fees for time billed to *Diligent I* after March 15, 2024, virtually all of which was spent preparing for and attending that conference. As discussed below, however, the *reasonable* hours spent preparing for and attending the March 22, 2024 conference are somewhat lower.

Next, plaintiff argues that a reduction should be applied to the total amount of hours included in the fee award due to block billing. *See* Pl. Opp. at 8. Block billing is not in and of itself improper, but may require reductions if it "impedes a court's ability to assess whether the time expended on any given task was reasonable," *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 53 (S.D.N.Y. 2015), or to assess how much time was spent on compensable as opposed to un-compensable tasks. In this case, block billing makes it difficult for the Court to determine how much of Fried Frank's post-March 12 work was spent on preparing for the March 22 conference. For example, on March 18, 2024, attorney Kalanchoe spent 7.7 hours performing a variety of tasks, ranging from "draft [pre-conference] letter to SDNY" (which was properly charged to *Diligent I*) to "legal research regarding Rule 41 under current circumstances" (which arguably constituted advance planning for *Diligent II*). *See* Keats Decl. Ex. 4 at 2. Similar entries appear on the firm's earlier invoices, some of which make it difficult to determine how much time was spent on work that could not "be used in an ongoing or subsequent litigation." *Zucker*, 1990 WL 20171, at *1. *See*, *e.g.*, Keats Decl. Ex. 1 at 5 (December 15, 2023 entry showing that attorney Kalanchoe spent

7.8 hours on a variety of tasks, some of them likely un-compensable because the work could be reused in *Diligent II*). Thus, a percentage reduction is warranted due to Fried Frank's block billing.

In plaintiff's view, a further reduction is warranted because "there were too many cooks in the kitchen that spent too much time on overlapping and uncomplicated tasks," Pl. Opp. at 7, and because Fried Frank engaged in "top heavy" billing. *Id.* at 8. I agree. For example, six attorneys (including two partners) billed time in December 2023 for drafting, reviewing, or finalizing the notice of removal. *See* Keats Decl. Ex. 1 at 2, 5-7. That same month, three Fried Frank lawyers (including two partners) worked on defendants' letter to the Court requesting an extension of time. *Id.* at ECF pp. 6-7.

To address both of these issues – block billing and overstaffing, including for relatively simple tasks – the total hours billed will be reduced by 25%. *See, e.g.*, *Hines*, 613 F. App'x at 55 (affirming district court's application of a 30% reduction based, in part, on block-billed entries); *Beastie Boys*, 112 F. Supp. 3d at 57 (applying 30% reduction to compensate for block billing and overstaffing, and collecting cases applying similar reductions). The remaining hours will then be multiplied by the reasonable hourly rate of each relevant timekeeper:

| Name | Reasonable Hourly Rate | Hours Billed | After 25% Reduction | Reasonable Fees |
|---|---|---|---|---|
| Wareham | $ 1,500 | 0.4 | 0.3 | $ 450 |
| Keats (2023) | 1,225 | 5.6 | 4.2 | 5,145 |
| Keats (2024) | 1,300 | 15.7 | 11.8 | 15,340 |
| Siroka (2023) | 1,225 | 4.0 | 3.0 | 3,675 |
| Siroka (2024) | 1,350 | 1.5 | 1.1 | 1,485 |
| Borek | 950 | 7.9 | 5.9 | 5,605 |
| Berger | 825 | 2.4 | 1.8 | 1,485 |
| Kalanchoe (2023) | 800 | 28.1 | 21.1 | 16,880 |
| Kalanchoe (2024) | 850 | 36.0 | 27.0 | 22,950 |
| Keyes | 525 | 15.2 | 11.4 | 5,985 |
| Strecker | 250 | 8.1 | 6.1 | 1,525 |
| **Total** | | | | **$ 80,525** |

AML is thus entitled to an award of attorneys' fees in the amount of **$80,525**.[6]

### C. Expenses

Finally, AML requests reimbursement for $1,542.54 in legal expenses incurred during *Diligent I*, including expenses incurred for duplicating, courier services, and court reporting. *See* Keats Decl. at 9. Plaintiff does not challenge any of these expenses. Accordingly, AML is entitled to recover **$1,542.54** in legal expenses.

## IV. CONCLUSION

For the reasons set forth above, AML is entitled to **$80,525** in attorneys' fees and **$1,542.54** in legal expenses pursuant to Rule 41(d). Diligent must pay AML a total of **$82,067.54** within 30 days of today's date.[7] The Clerk of Court is respectfully directed to close the motion at Dkt. 78.

Dated: New York, New York
March 3, 2026

**SO ORDERED.**



**BARBARA MOSES**
**United States Magistrate Judge**

---

[6] All reduced hours have been rounded to the nearest one-tenth of an hour, and all dollar amounts have been rounded to the nearest dollar.

[7] As noted above, the district judge referred the instant fee application to me as a non-dispositive matter. Consequently, I have issued an order "stating the decision." Fed. R. Civ. P. 72(a). If and to the extent the fee application could be considered a dispositive matter within the scope of Fed. R. Civ. P. 72(b)(1), I recommend, respectfully, that AML be awarded **$80,525** in attorneys' fees, and **$1,542.54** in legal expenses, to be paid by Diligent within 30 days.

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS

A party dissatisfied with a magistrate judge's determination of a non-dispositive matter "may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008); *Nguedi v. Caulfield*, 813 F. App'x 1, 3 (2d Cir. 2020) (summary order).

A party dissatisfied with a magistrate judge's recommendation as to a dispositive matter may serve and file "specific written objections" within 14 days after being served with a copy of the recommendation. Fed. R. Civ. P. 72(b)(2). The district judge must then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Failure to file timely objections will result in a waiver of such objections and will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).